The **PUBLIC INTEREST LEGAL FOUNDATION,**

*Plaintiff,*

*v.*

**NORTH CAROLINA STATE BOARD OF ELECTIONS,**

*Defendant.*

No. _____

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff Public Interest Legal Foundation (the "Foundation"), by its attorneys, brings this action for violations of Section 8 of the National Voter Registration Act of 1993 ("NVRA"), 52 U.S.C. § 20507.

## JURISDICTION AND VENUE

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, because the action arises under the laws of the United States. This Court also has jurisdiction under 52 U.S.C. § 20510(b), as the action seeks injunctive and declaratory relief under the NVRA.

2.      Venue in this Court is proper under 28 U.S.C. § 1391(b)(1), because the Defendant resides in this district, and under 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claim occurred in this district.

## PARTIES

3.      The Public Interest Legal Foundation, Inc., (the "Foundation") is a non-partisan, public interest organization incorporated and based in Indianapolis, Indiana. The Foundation seeks to promote the integrity of elections nationwide through research, education, remedial

programs, and litigation. The Foundation regularly utilizes the NVRA's Public Disclosure Provision and state and federal open records laws that require government records be made available to the public. Using records and data compiled through these open records laws, the Foundation produces and disseminates reports, articles, blog and social media posts, and newsletters in order to advance the public education aspect of its organizational mission.

4.     Defendant North Carolina State Board of Elections is the state agency responsible for the administration of North Carolina's election laws. The State BOE oversees elections and supervises and maintains voter registration and election records. The Executive Director of the State BOE is the Chief State Election Official of North Carolina for purposes of the NVRA and is responsible for coordination of State responsibilities under the NVRA. N.C. Gen. Stat. § 163A-861.

5.     Under 52 U.S.C. § 20507(i), the State BOE is required to maintain all records related to registration list maintenance activities for at least two years and must permit public inspection of all such records.

6.     The State BOE is a custodian of the requested records.

## BACKGROUND

7.     This is a public records case. More than nine months ago, the Foundation requested access to records that federal law entitles the Foundation to inspect and photocopy. Defendant is admittedly denying the Foundation access to the requested records. The Foundation now has no recourse but to seek relief from this Court.

8.     The governing statute is more than just a federal freedom of information law. Rather, upon request, election administration officials must "make available for *public inspection* . . . all records concerning the implementation of programs and activities conducted

for the purpose of ensuring the accuracy and currency of official lists of eligible voters." 52 U.S.C. § 20507(i)(1) (emphasis added) (hereafter, the "Public Disclosure Provision").

9. The Public Disclosure Provision confers on the Foundation and every individual "a public right to information." *Project Vote/Voting for Am., Inc. v. Long*, 752 F. Supp. 2d 697, 703 (E.D. Va. 2010). "[A] statutory right to information is substantive" in kind, *Landrum v. Blackbird Enters.*, LLC, 214 F. Supp. 3d 566, 571 (S.D. Tex. 2016), and thus a violation of that right creates an informational injury sufficient to establish Article III standing, *FEC v. Akins*, 524 U.S. 11, 21 (1998) ("[A] plaintiff suffers an 'injury in fact' when the plaintiff fails to obtain information which must be publicly disclosed pursuant to a statute").

10. The Fourth Circuit Court of Appeals instructs that the Public Disclosure Provision is to be interpreted broadly, explaining that the NVRA's "use of the word 'all' [as a modifier] suggests an expansive meaning because 'all' is a term of great breadth." *Project Vote / Voting for Am., Inc. v. Long*, 682 F.3d 331, 336 (4th Cir. 2012). The Public Disclosure Provision's "language embodies Congress's conviction that Americans who are eligible under law to vote have every right to exercise their franchise, a right that must not be sacrificed to administrative chicanery, oversights, or inefficiencies." *Id*. at 334-35. Accordingly, "the NVRA requires disclosure of all materials described in Section 8(i)(1), including voter registration records." *Id*. at 337 (emphasis added).

11. As recently articulated by the Southern District of Florida, Congress intended that the NVRA's inspection rights would allow the public to monitor the activities of government as they concern the right to vote:

> [The NVRA's Public Disclosure Provision is] available to any member of the public … and convey[s] Congress's intention that the public should be monitoring the state of the voter rolls and the adequacy of election officials' list maintenance programs. [52 U.S.C. § 20507(i)]. Accordingly, election officials must provide full

3

public access to all records related to their list maintenance activities, including their voter rolls. *Id.* This mandatory public inspection right is designed to preserve the right to vote and ensure that election officials are complying with the NVRA. *Project Vote v. Long*, 682 F.3d. 331, 335 (4th Cir. 2012).

*Bellitto v. Snipes*, No. 16-cv-61474, 2018 U.S. Dist. LEXIS 103617, at *8 (S.D. Fla. Mar. 30, 2018).

12.     According to this Court, "to the extent [Defendant] maintains records concerning implementation of its list maintenance activities . . . [it] is required to make such records available for public inspection." *Voter Integrity Project NC, Inc. v. Wake Cty. Bd. of Elections*, 301 F. Supp. 3d 612, 618 n.5 (E.D.N.C. 2017).

13.     Defendant North Carolina State Board of Elections ("State BOE"), the state agency charged with the administration of the voter registration and elections process, is not complying with the NVRA's Public Disclosure Provision. By denying the Foundation access to the requested records, the State BOE is causing a concrete injury to the Foundation in violation of the Foundation's right to information conferred by the NVRA and is frustrating the Foundation's organizational mission. To remedy its ongoing injury, the Foundation seeks declaratory and injunctive relief from this Court. Specifically, the Foundation seeks a declaration that the requested records are subject to public inspection under the NVRA. The Foundation also seeks an order compelling the State BOE to comply with the NVRA's Public Disclosure Provision through an order commanding the State BOE to permit inspection and duplication of all requested records in its actual and constructive possession.

14.  The NVRA's Public Disclosure Provision provides:

Each State shall maintain for at least 2 years and shall make available for public inspection and, where available, photocopying at a reasonable cost, all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters, except to the extent that such records relate to a declination to register to vote or to

4

the identity of a voter registration agency through which any particular voter is registered.

52 U.S.C. § 20507(i)(1); *see also Project Vote v. Long*, 682 F.3d 331, 337 (4th Cir. 2012) ("First, the statute clearly states that '*all* records' falling under Section 8(i)(1) must be publicly disclosed, not just those explicitly listed in Section 8(i)(2)") (emphasis in original).

15.    The only records exempted from the NVRA's Public Disclosure Provision are "records relate[d] to a declination to register to vote or the identity of a voter registration agency through which any particular voter is registered." 52 U.S.C. § 20507(i)(1).

16.    The NVRA's civil enforcement provision allows for a private right of action by any person "aggrieved by a violation," after providing, if necessary, "written notice of the violation to the chief election official of the State involved." 52 U.S.C. § 20510(b).

> If the violation is not corrected within 90 days after receipt of a notice . . . or within 20 days after receipt of the notice if the violation occurred within 120 days before the date of an election for Federal office, the aggrieved person may bring a civil action in an appropriate district court for declaratory or injunctive relief with respect to the violation.

52 U.S.C. § 20510(b)(2).

17.    However, "[i]f the violation occurred within 30 days before the date of an election for Federal office, the aggrieved person need not provide notice to the chief election official of the State under paragraph (1) before bringing a civil action under paragraph (2)." 52 U.S.C. § 20510(b)(3).

18.    A person is "aggrieved" by a violation of the Public Disclosure Provision if the person is denied access to records to which he is entitled under the NVRA.

**Programs and Activities Conducted to Ensure Accuracy of the Voter Rolls**

19.    In North Carolina, list maintenance records are maintained by state and county officials using a statewide computerized voter registration system, which facilitates voter

5

registration and provides a central database containing voter registration information for each county. N.C. Gen. Stat. § 163A-874.

20.     The State BOE is required to "adopt a uniform program that makes a diligent effort not less than twice each year . . . [t]o remove the names of ineligible voters from the official lists of eligible voters." N.C. Gen. Stat. § 163A-877(a).

21.     The State BOE has the authority to perform list maintenance with the same authority as a county board. N.C. Gen. Stat. § 163A-877(e).

22.     The State BOE coordinates with the North Carolina Division of Motor Vehicles ("DMV") to identify registered voters who have indicated to DMV that they do not satisfy the citizenship qualification to register and vote. *See* Exhibit A (report of audit conducted after 2016 General Election).[1] Each such registrant is sent a notice asking for confirmation of his or her citizenship status. Registrants who fail to respond to the inquiry are removed from the lists of registrants who are eligible to vote. Records related to those activities are responsive to the Foundation's request and must be made available under the Public Disclosure Provision.

23.     The State BOE coordinates with the U.S. Department of Homeland Security and the U.S. Citizenship and Immigration Service to identify registrants who do not satisfy the citizenship qualification to register and vote. Exhibit G at 2-3. Records related to those activities are responsive to the Foundation's request and must be made available under the Public Disclosure Provision.

---

[1] *See also, e.g.*, Letter from State BOE Executive Director Gary Bartlett to North Carolina House Elections Committee, Attachment B at 6, March 11, 2013, available at, https://www.ncleg.gov/documentsites/committees/JointAppropriationsGeneralGovernment/2013%20Session/03-07-13%20Meeting/sbe_GA_response_with_attachments.pdf (last accessed June 16, 2019) (describing DMV audit to identify and remove noncitizens who are registered to vote).

6

24.     On information and belief, the State BOE has engaged and is engaging in other programs and activities conducted to identify and remove ineligible registrants from the registration rolls, including registrants who do not satisfy the necessary citizenship requirements. Records related to those activities are responsive to the Foundation's request and must be made available under the Public Disclosure Provision.

**Instances of Registration and Voting by Noncitizens in North Carolina**

25.     United States citizenship is a requirement to register and to vote in North Carolina. N.C. Gen. Stat. § 163A-841(a).

26.     In 2014, the State BOE reported that it "completed an audit of more than 10,000 registered voters with questionable citizenship status. The Agency analyzed data provided by the N.C. Division of Motor Vehicles and the U.S. Department of Homeland Security to flag 1,425 currently registered voters who are likely non-citizens."[2]

27.     In April 2017, the State BOE issued the Post-Election Audit Report for General Election 2016. Exhibit A. The audit's Summary provides:

> **41 non-citizens with legal status (green card, etc.) cast ballots.** The State Constitution only permits U.S. citizens to register and to vote. The audit pairing state and federal databases identified an additional 34 voters who provided documents showing they are U.S. citizens. Investigators continue to review 61 additional records.

Exhibit A at 3 (bolded language in original).

28.     In August 2018, federal prosecutors charged 19 foreign nationals with registering to vote and voting illegally in North Carolina in the 2016 presidential election.[3]

---

[2] Press Release, North Carolina State Board of Elections, *Board of Elections finalizes citizenship audit*, Oct. 24, 2014, https://www.ncsbe.gov/press-releases?udt_2226_param_detail=15.

[3] Press Release, U.S. Attorney's Office, Eastern District of North Carolina, *Nineteen Foreign Nationals Charged for Voting in 2016 Election*, Aug. 24, 2018, https://www.justice.gov/usao-ednc/pr/nineteen-foreign-nationals-charged-voting-2016-election.

7

**The Foundation Sought and was Denied Access to Records Concerning Noncitizen Registrants and Voters**

29.     On September 10, 2018, the Foundation sent letters via email to the county boards of elections for the counties of Durham, Guilford, and Forsyth. Copies of these letters are attached as Exhibit B.

30.     Citing the NVRA's Public Disclosure Provision of the NVRA, 52 U.S.C. § 20507(i), the Foundation's letters sought the opportunity to inspect the following three broad categories of records concerning each county board's programs and activities related to the registration and removal of suspected and actual non-U.S. citizens since 2006:

> 1. Documents regarding all registrants who were identified as potentially not satisfying the citizenship requirements for registration from any official information source, including information obtained from the various agencies within the U.S. Department of Homeland Security, North Carolina Department of Motor Vehicles, and from the North Carolina State Board of Elections since January 1, 2006. This request extends to all documents that provide the name of the registrant, the voting history of such registrant, the nature and content of any notice sent to the registrant, including the date of the notice, the response (if any) of the registrant, and actions taken regarding the registrant's registration (if any) and the date of the action. This request extends to electronic records capable of compilation.

> 2. All documents and records of communication received by your office from registered voters, legal counsel, claimed relatives, or other agents since January 1, 2006 requesting a removal or cancellation from the voter roll for any reason related to non-U.S. citizenship. Please include any official records indicating maintenance actions undertaken thereafter.

> 3. All documents and records of communication received by your office from jury selection officials—state and federal--since January 1, 2006 referencing individuals who claimed to be non-U.S. citizens when attempting to avoid serving a duty call. This request seeks copies of the official referrals and documents indicating where your office matched a claim of noncitizenship to an existing registered voter and extends to the communications and maintenance actions taken as a result that were memorialized in any written form.

31.     The request also provided specific examples of responsive documents, including the "completed voter application form" for each registrant and "[a]ny documents sent by your office to the voter to require that an affirmation of citizenship or

8

noncitizenship be given in writing with responses included, where applicable." The full scope of records sought is available at Exhibit B.

32.     When the Foundation received no response to the requests, the Foundation notified each county board on October 1, 2018 that it was in violation of the NVRA, copying the State BOE on the correspondence. Exhibit C.

33.     On October 1, 2018, Patrick Gannon, Public Information Officer for the State BOE, contacted the Foundation via email, stating,

> We at the State Board of Elections & Ethics Enforcement hope to help facilitate a response to your recent records request to some of North Carolina's county boards of elections, as our agency likely houses some of the data responsive to your request.
>
> We are aware of requests to two counties – Durham and Forsyth. Were additional requests made to other counties?

Exhibit D at 4.

34.     On October 1, 2018, the Foundation made the State BOE aware of the third pending records request—to Guilford County—and, on October 9, 2018, the Foundation asked the State BOE to collect and provide "identical information" from the counties of Mecklenburg and Buncombe. Exhibit D at 3-4. The requests for records of the county boards in Durham, Forsyth, Guilford, Mecklenburg, and Buncombe are hereafter referred to collectively as the "County Records Requests."

35.     When no further correspondence was received from the State BOE, the Foundation wrote to the State BOE via email on October 29, 2018, asking for an update on the progress of the County Records Requests. Exhibit D at 3.

36.     Later that day, the State BOE responded via email, assuring the Foundation that the State BOE was "working on them" and "would hope to have a response to [the Foundation] some time in November." Exhibit D at 2.

9

37.     The State BOE did not produce any records or further communicate with the Foundation in November 2018.

38.     Cognizant that the State BOE was facing uncertainty regarding the legality of its composition[4], the Foundation remained patient, and agreed to travel to State BOE offices to conduct an in-person inspection of the requested records on January 11, 2019. On December 13, 2018, the Foundation informed the State BOE via email of its plans to visit the State BOE for an inspection. Exhibit D at 2.

39.     On or around January 9, 2019, the State BOE contacted the Foundation via telephone to communicate that the scheduled in-person visit was not necessary because the State BOE would begin production of records by the end of January—as agreed to by both parties at the time. On January 9, 2019, the phone call was memorialized in an email, in which the State BOE stated, "Working on the citizenship request now, per our discussion. I will send records for your additional request on a rolling basis as they are reviewed and redacted." Exhibit D at 2. Based on those representations, the Foundation cancelled its representative's flight to State BOE offices. However, the State BOE did not produce any records or further communicate with the Foundation by the end of January 2019.

40.     More than two months later, on April 10, 2019, the Foundation again wrote to the State BOE via email to request an update on the progress of the County Records Requests, stating, "We're well-past the agreed time and are simply running out of runway. Please advise asap." Exhibit D at 1.

_____

[4] Horsch, The News & Observer, The clock is ticking for elections board ruled unconstitutional, but there's a reprieve, Nov. 30, 2018, https://www.newsobserver.com/news/politics-government/article222432185.html.

41.     Later than day, the State BOE responded via email, assuring the Foundation that an "update" and records were imminently forthcoming, stating, "I will give you a full update and hopefully start providing responsive documents tomorrow or Friday." Exhibit D at 1. The State BOE did not produce any "update" or any records by Friday, April 12, 2019.

42.     The Foundation waited for a response for nearly three additional weeks before again contacting the State BOE.

43.     On April 30, 2019, the Foundation contacted Kim Westbrook Strach, then-Executive Director of the State BOE and North Carolina's Chief Election Official, by letter via email and through the United States Postal Service. A copy of the letter, hereafter referred to as the "NVRA Violation Notice" is attached as Exhibit E. A copy of the email sent to Executive Director Strach (and the general contact email for the State BOE—Elections.SBOE@ncsbe.gov) attaching the NVRA Notice Letter is attached as Exhibit F.

44.     State BOE Chairman Robert Cordle received a copy of the NVRA Violation Notice via the United States Postal Service. Exhibit E at 3.

45.     The NVRA Violation Notice notified Executive Director Strach that the Foundation has not received any responsive records from her office, despite repeated assurances that production of records was imminently forthcoming. Exhibit E at 1.

46.     The NVRA Violation Notice also notified Executive Director Strach that the requested records are subject to disclosure under to the NVRA's Public Disclosure Provision, 52 U.S.C. § 20507(i). Exhibit E at 1.

47.     The NVRA Violation Notice also notified Executive Director Strach that the State BOE is in violation of the NVRA for failure to permit inspection and photocopying of the requested records, as required by 52 U.S.C. § 20507(i). Exhibit E at 1.

48.     A primary election for federal office in North Carolina was scheduled for and did occur on May 14, 2019.[5]

49.     The NVRA violation described in this Complaint occurred and was ongoing within 30 days of the federal election scheduled for May 14, 2019.

50.     For NVRA violations occurring within 30 days of an election for federal office, there is no curative period. "The aggrieved person need not provide notice to the chief election official of the State . . . before bringing a civil action . . . ." 52 U.S.C. § 20510(b)(3).

51.     Although not required by the NVRA, the Foundation nevertheless provided pre-litigation notice to Executive Director Strach—the Chief Election Official of North Carolina, N.C. Gen. Stat. § 163A-861—in an effort to resolve this dispute without court intervention.

52.     The NVRA Notice Letter informed the Executive Director Strach and the State BOE that "[i]f the NVRA violation described herein is not corrected immediately, the Foundation will pursue federal litigation to enforce its rights." Exhibit E at 3.

53.     On May 3, 2019, the Foundation received a letter and documents via email from Josh Lawson, then-General Counsel for the State BOE. A copy of the letter is attached as Exhibit G.

54.     The State BOE's May 3 letter describes programs and activities conducted by the State BOE to perform registration list maintenance with respect to suspected or actual noncitizen registrants and acknowledged that records of those programs and activities are responsive to the Foundation's requests. Exhibit G at 2-3.

55.     The May 3 letter further explained that the State BOE will not permit the Foundation to inspect those records. Exhibit G at 2-3.

---

[5] https://s3.amazonaws.com/dl.ncsbe.gov/Elections/2019/District9Candidates.pdf.

12

56. The State BOE attached to its May 3 letter a small number of records it claimed were responsive to the Foundation's request.

57. The attached records included the State BOE's Post-Election Audit Report for General Election 2016 (the "2016 Audit"). Exhibit A.

58. The 2016 Audit describes programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters with respect to suspected and actual noncitizens. Exhibit A at 3, 5-6, 9-10.

59. The 2016 Audit refers to "[i]nformation obtained from those who are not citizens," Exhibit A at 6, and includes documents entitled "Sample Letter to Possible Non-U.S. Citizen Voters," Exhibit A at 29-30, and "Admission or Denial of Non-U.S. Citizen Return Form," Exhibit A at 31.

60. The 2016 Audit also includes a document that indicates how many registered noncitizens were identified in each North Carolina county. Exhibit A at 22-23. Each of the counties from which records were requested had at least one noncitizen whose registration was canceled in connection with the 2016 Audit. *Id*.

61. Records relating to the 2016 Audit were requested, are responsive to the County Records Request, and must be made available for inspection under the NVRA's Public Disclosure Provision.

62. Although the Foundation had already done so, the May 3 letter asked the Foundation to "please indicate what records it now seeks." Exhibit G at 3.

63. On May 9, 2019, the Foundation responded to the State BOE via letter, which explained why the State BOE's decision to withhold the requested records is without justification and explained that the State BOE "remains in violation of the NVRA." Exhibit H at 2.

13

64. The May 9 letter further explained that the Foundation continues to seek all records responsive to its request and repeated the examples of such records, Exhibit H at 2, specifically referencing the records described in the 2016 Audit (Exhibit A).

65. The Foundation informed the State BOE that its representative planned to visit the State BOE's offices a week later, on May 16, 2019, to inspect and retrieve copies of the requested records. Exhibit H at 2.

66. On May 13, 2019, the Foundation received an email from Paul Cox, an attorney in the North Carolina Attorney General's Office, who claimed to represent the State BOE. Exhibit I at 4-5. The State BOE stated it would not accommodate the Foundation's planned inspection due to the need to prepare for two upcoming special elections. *Id*. at 5. Counsel for the State BOE proposed a phone call to discuss the Foundation's records request and provided the days and times he would be available the following week. *Id*. at 5.

67. The Foundation was forced to rearrange its travel plans to accommodate the schedule of the State BOE and its counsel.

68. In a letter dated May 14, 2019, the Foundation informed the State BOE that its representative now planned to visit the State BOE's offices the week following the special election and on a day when Mr. Cox stated he was available—May 23, 2019. Exhibit J.

69. A week later, and two days before the Foundation's scheduled travel to State BOE offices, counsel for the State BOE stated in an email that the State BOE would mail responsive records to the Foundation on a hard drive. Exhibit I at 3-4. Counsel did not describe the records or state whether the State BOE was continuing to withhold responsive records as described in its May 3 letter.

70. The next day, May 22, 2019, the Foundation responded via email, stating,

14

> I cannot presently assess whether the records satisfy the request in full. Because my travel is already booked, I believe the best way to proceed is to retrieve the records in person, as planned. That way I can review what was compiled and resolve any outstanding issues in person. Hopefully, that will allow us to conclude this matter as quickly as possible.
>
> My plan is to arrive at the offices of the State Board at 10:00 am. If you prefer to be present and if another meeting location is preferable, please let me know as soon as possible.

Exhibit I at 3.

71. Counsel for the State BOE did not respond to the Foundation's May 22, 2019 email.

72. On May 22, 2019, the Foundation's representative traveled from Indianapolis, Indiana to Raleigh, North Carolina, and the following day, visited the State BOE's offices, as planned and as was communicated to the State BOE on May 14, 2019.

73. When the Foundation's representative arrived, an administrative assistant gave him an envelope containing a cover letter, dated May 22, 2019, and a hard drive.

74. The Foundation's representative asked to speak with then-General Counsel Josh Lawson, who informed the Foundation that he could not discuss the Foundation's records request further and referred the Foundation's representative to the State BOE counsel, Paul Cox.

75. The hard drive provided to the Foundation on May 23, 2019 did not contain the requested records. With limited exception, the hard drive contained the same incomplete set of records provided via email on May 3, 2019.

76. The May 22 cover letter that accompanied the hard drive explained, "For further background, I refer you to the May 3, 2019 letter from Board of Elections General Counsel Josh Lawson that was addressed to you." Exhibit K.

77. While still in Raleigh, North Carolina, the Foundation's representative contacted the State BOE's counsel via email and asked to meet in person to discuss the Foundation's request for records. Exhibit I at 3.

78. The State BOE's counsel responded that he could not meet due to deadlines and child care. Exhibit I at 2.

79. On May 29, 2019, the Foundation spoke via telephone with the State BOE's counsel. During that call, the Foundation asked whether the State BOE is continuing to withhold records under the position stated in the May 3, 2019 letter from then-General Counsel Josh Lawson (Exhibit G), or whether the State BOE will permit inspection of the records as requested. State BOE counsel stated that he needed additional time to confirm his client's position. Exhibit I at 1 (email memorializing telephone call).

80. On June 7, 2019, counsel for the State BOE left a voicemail for the Foundation, in which he indicated that the State BOE is standing by its previously-stated position—that taken in its May 3 letter (Exhibit G)—that the Foundation is not entitled to inspect the requested records.

81. It has now been **280 days** since the Foundation first requested access to public voter list maintenance records in the possession of North Carolina election officials.

82. The Foundation has spent considerable time and financial resources in an effort to obtain the requested records without the need for judicial intervention.

83. Despite those efforts, the State BOE is denying the Foundation's request for inspection of records pursuant to the NVRA's Public Disclosure Provision.

**The State BOE is Violating the NVRA by Refusing to Provide Inspection of the Requested Records**

84.     The records requested from the State BOE are records "concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters. . . ." 52 U.S.C. § 20507(i)(1).

85.     Under the NVRA, the State BOE is obligated to make the requested records available for public inspection and photocopying. *Id*.

86.     The State BOE has not done so and is therefore in violation of law. 52 U.S.C. § 20510.

87.     The State BOE's violation of the NVRA occurred within 30 days of an election for federal office and the violation is ongoing. Therefore, there is no pre-litigation notice requirement. 52 U.S.C. § 20510(b)(3).

88.     However, North Carolina's Chief Election Official was sent and received notice on April 30, 2019 that the State BOE was violating the NVRA. Exhibits E and F. Even if the 20-day curative period provided by 52 U.S.C. § 20510(b)(2) applied, the notice requirement has been satisfied. *See Voter Integrity Project NC, Inc. v. Wake Cty. Bd. of Elections*, 301 F. Supp. 3d 612, 617 n.4 (E.D.N.C. 2017).

**The State BOE's Violation of the NVRA is Harming the Foundation and the Public**

89.     "[A] plaintiff suffers an 'injury in fact' when the plaintiff fails to obtain information which must be publicly disclosed pursuant to a statute." *FEC v. Akins*, 524 U.S. 11, 21 (1998). The Foundation is suffering a clear informational injury as a direct result of the State BOE's violations of the NVRA because the State BOE has denied the Foundation access to the records to which it is entitled under the law. This injury is ongoing.

17

90.     The State BOE's actions have also frustrated and harmed the Foundation's organizational mission.

91.     As an integral part of its public interest mission, the Foundation gathers and disseminates information about compliance by state and local officials with federal election statutes, including election integrity statutes.

92.     Using records and data compiled through use of the NVRA's Public Disclosure Provision, the Foundation has produced written reports concerning the registration and voting activity of noncitizens. The Foundation publishes and disseminates these reports as part of its mission.

93.     The Foundation publicizes its work through media and press sources. Representatives of the Foundation appear on national television programs and in widely circulated newspapers of record to discuss the inadequacies of state election systems in preventing noncitizens from registering and voting. The Foundation believes that keeping voter rolls free of ineligible registrants requires full transparency of government agencies. By denying the Foundation access to the requested records the State BOE has impaired and will impair the Foundation from carrying out its mission.

94.     A central activity of the Foundation is to promote election integrity and compliance with federal and state statutes that are designed to improve the accuracy of voter rolls across the country. The State BOE's violations of NVRA have impaired and will impair the Foundation from carrying out this its mission.

95.     The failure of the State BOE to comply with its obligations under the NVRA has also undermined the confidence of North Carolina's properly registered voters in the integrity of

18

the voter registration rolls, and, accordingly, has undermined the integrity of elections held across the State of North Carolina.

96. The State BOE has not cured its violation of the NVRA.

97. The State BOE's failure to permit inspection and duplication of the requested records pursuant to the NVRA is causing the Foundation to suffer an informational injury and has further frustrated, impeded and harmed the efforts of the Foundation.

## COUNT I

**Violation of the NVRA**
**Failure to Permit Inspection and Duplication of List Maintenance Records**

98. Plaintiff realleges paragraphs 1 through 97 as if fully stated herein.

99. Defendant has failed to permit inspection and duplication of records concerning Defendant's implementation of programs and activities conducted to ensure the accuracy and currency of the official lists of eligible registrants, in violation of Section 8 of the NVRA, 52 U.S.C. § 20507(i). *See Project Vote v. Long*, 682 F.3d 331, 334-335 (4th Cir. 2012) (The NVRA requires election officials to provide such records to the public).

100. Defendant has not cured its violation of law.

101. Plaintiff is suffering an informational injury as a direct result of Defendant's violations of Section 8 of the NVRA because the Plaintiff does not have the data and records requested. The NVRA confers upon Plaintiff a right to information, and by denying that information to the Plaintiff, the Defendant has caused a concrete injury to the Plaintiff.

102. Plaintiff will continue to be injured by the Defendant's violations of Section 8 of the NVRA unless and until the Defendants are enjoined from continuing to violate the law.

103. Plaintiff has no adequate remedy at law.

19

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for a judgment:

1. Declaring that Defendant is in violation of Section 8 of the NVRA;

2. Ordering the Defendant to provide to the Plaintiff the records concerning their implementation of programs and activities to ensure the accuracy and currency of voter registration lists;

3. Ordering the Defendant to pay Plaintiff's reasonable attorney's fees, including litigation expenses and costs, pursuant to 52 U.S.C. § 20510(c); and

4. Granting Plaintiff further relief that this Court deems just and proper.

[Signature Page Follows]

Dated: June 17, 2019.

Respectfully submitted,

For the Plaintiff Public Interest Legal Foundation:

/s/ Benton G. Sawrey
Benton G. Sawrey (N.C. Bar #46379)
Narron Wenzel, P.A.
102 S. Third Street
PO Box 1567
Smithfield, N.C. 27577
T: (919) 934-0049
F: (919) 934-6280
bsawrey@narronwenzel.com
Local Civil Rule 83.1 Counsel

/s/ J. Christian Adams
J. Christian Adams* (Virginia Bar #42543)
Public Interest Legal Foundation, Inc.
1555 King St., Ste. 200
Alexandria, VA 22314
Tel: (317) 203-5599
Fax: (888) 815-5641
adams@PublicInterestLegal.org

/s/ Noel H. Johnson
Noel H. Johnson* (Wisconsin Bar #1068004)
Public Interest Legal Foundation, Inc.
32 E. Washington St., Ste. 1675
Indianapolis, IN 46204
Tel: (317) 203-5599
Fax: (888) 815-5641
njohnson@PublicInterestLegal.org
*Special Appearance to be filed*

Attorneys for Plaintiff Public Interest Legal Foundation