EXHIBIT 2



# NORTH CAROLINA
## STATE BOARD OF ELECTIONS

<u>VIA EMAIL</u>
Public Interest Legal Foundation
   c/o   Noel Johnson, Esq.


May 3, 2019


Re:   <u>Notice citing the National Voter Registration Act of 1993 (NVRA).</u>


Dear Ms. Johnson:

     This letter responds to the above-referenced Notice, *enclosed*, received by the N.C. State Board of Elections Office ("State Board Office") today by U.S. Mail. We are aware of communications between the Public Interest Legal Foundation (PILF) and certain staff at the State Board Office in recent months, and it appears a number of items may have been misunderstood.

     Records are maintained and freely available for list maintenance activities as to each registered voter, statewide, online: ncVoter_Statewide.zip (468.7 MB). It was our understanding that PILF was previously aware of that public file, which is updated weekly to reflect current registration and list maintenance activities. From the public file, PILF can identify each individual removed from the rolls, the reason for that removal, and the date of removal. Additional information is also available to you using that file. Our State has gone further and made freely available individual voter participation history for all voters, statewide, at no cost: nchist_Statewide.zip (264.4 MB).

     However, your Notice states that PILF's request is fundamentally for records affecting "registrations belonging to individuals who do not satisfy the citizenship requirements for voting," and your correspondence to various counties further clarifies that you seek "information obtained from the various agencies within the U.S. Department of Homeland Security, North Carolina Department of Motor Vehicles" and this Agency.

The State Board Office is unable to disclose the identity of particular individuals in the manner you request, although we wish to provide you an overview of the process and the reasons why individuals cannot be identified in the manner sought.

In 2013, the State Board Office sought to enhance its ability to identify non-citizen registrants by entering an agreement with the U.S. Department of Homeland Security (DHS) and the United States Citizenship and Immigration Service (USCIS) to access their Systematic Alien Verification for Entitlements (SAVE) Program, which allows state agencies to query certain information regarding particular individuals' citizenship status. Before the State Board was granted access to the SAVE Program, however, DHS and USCIS required the State Board to enter into a memorandum of agreement that outlined and restricted the State Board's use and reliance on data from the SAVE Program. Additionally, the State Board was required to submit both the proposed agreement and other documents to the United States Department of Justice for preclearance under Section 5 of the Voting Rights Act. The State Board entered into this agreement in September 2013 (the "MOA"), *enclosed*.

Use and disclosure of information obtained through SAVE is strictly limited by the terms of our Agency's MOA with DHS and USCIS. We are required, for instance, to "use any information provided by DHS-USCIS under this MOA solely for the purpose of determining the eligibility . . . and limit use of such information accordance with this and all other provisions of this MOA," which expressly requires that the Agency "protect its confidentiality, including ensuring that it is not disclosed to any unauthorized person(s) without the prior written consent of DHS-USCIS." MOA at Sections IV(B)(1)(g) and (i), *enclosed*.

The SAVE Program is most effectively queried using alien identification numbers, which the State Board Office sought from the Department of Motor Vehicles. We understand that information is subject to nondisclosure under the Driver's Privacy Protection Act (DPPA).

In addition to the above, the State Board Office and certain county boards of elections continue to provide records sought by federal law enforcement, as described in Numbered Memos 2018-09 and 2019-01, *enclosed*. We will not presently disclose the identity of any prior or current registrant that may be subject to review by federal law enforcement.

Our Agency conducts list maintenance activities in a transparent manner consistent with the NVRA, and it has detailed investigatory steps regarding the use of the SAVE Program data and DMV data. *See* Post-Election Audit Report (April 21, 2017), *enclosed*. While the State Board Office cannot provide information and data otherwise restricted by agreement with federal agencies, the pendency of federal proceedings affecting that data, or other federal statutes, our Agency has provided broad access to list maintenance data for the entire state, supra.

Understanding the restrictions on the discrimination of particular data, we would ask that PILF please indicate what records it now seeks. We look forward to providing all records to which you are entitled under the NVRA.


Sincerely,

Josh Lawson
General Counsel


Encl.:     Memorandum of Agreement (2013)
           Post-Election Audit Report (2016), with copies of
           requested correspondence
           Numbered Memo 2019-01
           Numbered Memo 2018-09
           Notice Letter

<u>MEMORANDUM OF AGREEMENT</u>

BETWEEN THE DEPARTMENT OF HOMELAND SECURITY,
U.S. CITIZENSHIP AND IMMIGRATION SERVICES,
AND

**NORTH CAROLINA STATE BOARD OF ELECTIONS**

## I. PARTIES.

The parties to this Memorandum of Agreement (MOA) are the Department of Homeland Security, U.S. Citizenship and Immigration Services (DHS-USCIS), and the **North Carolina State Board of Elections** (User Agency). User Agency includes North Carolina county registrars responsible for maintaining voting rolls.

## II. AUTHORITY.

The authorities governing this MOA include, but are not limited to, the following:

Personal Responsibility and Work Opportunity Reconciliation Act of 1996, Pub. L. No. 104-193, 110 Stat. 2105, as amended.

Immigration Reform and Control Act of 1986, Pub. L. No. 99-603, 100 Stat. 3359, as amended.

Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub. L. No. 104-208, 110 Stat. 3009, as amended.

Privacy Act, 5 U.S.C. § 552a, as amended.

The Inter-Governmental Cooperation Act, 31 U.S.C. § 6501, et seq., as amended.

The National Voter Registration Act, 42 U.S.C. § 1973gg et seq., as amended

Help America Vote Act, 42 U.S.C. § 15301 et seq.as amended.

Voting Rights Act, 42 U.S.C. § 1973 et seq., as amended.

Civil Rights Act, 42 U.S.C. §§ 1971, 1974, as amended.

N.C. Gen. Stat. §§ 163-82.4(d), 163-82.10(a), 163-82.11, 163-82.12, 163-82.14(a), 1 and 63-82.19, as amended.

N.C. Gen. Stat. §§ 163-55, 163 -275 (13)-(18), as amended.

1

North Carolina Constitution, Article VI, Section 1

Pursuant to the requirements of OMB Circular A-97, which establishes the President's guidelines for implementing the Intergovernmental Cooperation Act, 31 U.S.C. Section 6501, et seq., as amended, the User Agency certifies that it cannot procure the immigration status verification services requested pursuant to this MOA reasonably and expeditiously through ordinary business channels.

## III. PURPOSE.

The purpose of this MOA is to establish the terms and conditions governing the participation of the User Agency in the DHS-USCIS Systematic Alien Verification for Entitlements (SAVE) Program for the purpose of verifying citizenship and immigration status information of non-citizen and naturalized or derived U.S. citizen **registrants** (registrants) **on the User Agency's Voter Registration Rolls** (benefit). The limited data will be provided to the User Agency by an:

1) Initial response (initial verification) by SAVE to an on-line inquiry by the User Agency; and

2) Additional verification procedures where applicable; or

3) A response to a properly submitted Form G-845.

## IV. RESPONSIBILITIES.

### A. DHS-USCIS agrees to:

(1) Maintain and make available to the User Agency in limited part and manner determined by DHS-USCIS after consultation with the User Agency, an immigration and naturalized or derived citizenship status information verification system under the SAVE Program known as the Verification Information System (VIS).

(2) Respond through VIS to properly submitted verification requests from the User Agency by providing the limited information noted in point (1) of **PURPOSE** immediately above;

(3) Process and respond to properly submitted additional verification requests submitted by the User Agency through VIS or on Form G-845. Response time may vary, depending on DHS-USCIS workload, resources available to process additional verification requests, and the registrant's specific circumstances;

(4) Provide to the User Agency operating instructions necessary to use VIS so that the User Agency can designate Users within the agency;

2

(5) Provide to the User Agency SAVE Program point of contact information for questions or problems regarding the User Agency's participation in SAVE;

(6) Provide access to training and information regarding the laws, policies, and procedures that govern verifying, safeguarding, using, maintaining, and disclosing certain citizenship and immigration status information;

(7) Provide the User Agency access to Form G-845, and other forms and/or supplements as appropriate, which may be reproduced and/or computer generated without prior DHS-USCIS approval;

(8) Recover no more than its actual costs. The total estimated cost of the agreement is specified on the attached USCIS Anticipated Collections from Non-Federal Sources Addendum. The User Agency certifies that it has obligated at least the amount specified on the USCIS Anticipated Collections from Non-Federal Sources Addendum to pay for its SAVE usage. DHS-USCIS shall notify the User Agency's designated Point of Contact (POC) in writing when the amount paid plus what is owed for unpaid usage equals 80 percent of the estimated total costs. DHS-USCIS will not provide services that would result in the amount paid plus the amount owed for unpaid usage exceeding the amount specified on the USCIS Anticipated Collections from Non-Federal Sources Addendum. In this instance, DHS-USCIS will be excused from further performance of the work unless and until the User Agency's authorized official increases estimated total cost of this agreement by modification pursuant to provision VIII of this MOA;

(9) Submit invoices to the User Agency's payment office at the address specified on the USCIS Anticipated Collections from Non-Federal Sources Addendum, with a copy furnished to the POC. DHS-USCIS may submit invoices when the work is completed or as otherwise authorized. The High Level Identifier, tax identification number, and associated dollar amounts will be referenced on all invoices; and

(10) Promptly initiate year-end and closeout adjustments once final costs are known.

**B. User Agency agrees to:**

(1) System Use.

 (a) Provide to the SAVE Program the information the SAVE Program requires to respond to User Agency requests for verification of immigration or naturalized or derived citizenship status information, including (1) information from the registrant's immigration or DHS citizenship documentation, i.e., Alien Registration, Naturalization Certificate or Certificate of Citizenship number, for initial automated verification, (2) additional information obtained from the alien's immigration or DHS citizenship documentation for automated additional verification, and (3) completed Forms G-845 and other documents and information required for manual additional verification. Institute additional verification for any registrant whose naturalized or derived citizenship status cannot be verified after conducting the automated initial verification. If SAVE is unable

3

Rev. Ver. 08/21/2013

to verify the registrant as a naturalized or derived citizen after conducting the second step additional verification, the User Agency will contact the registrant to obtain proof of citizenship in accordance with the provisions of this MOA. For manual only verification, ensure that Forms G-845 and other documents and information required for manual verification are provided;

(b) Ensure that, prior to using VIS, all Users performing verification procedures complete SAVE required training including: reading the SAVE Program Guide, taking the latest version of Web tutorial(s) and maintaining a working knowledge of requirements contained therein and in this MOA as updated;

(c) Ensure that User Agency representatives are provided with and maintain User Ids only while they have a need to perform verification procedures;

(d) Ensure all Users performing verification procedures comply with all requirements contained in the SAVE Program Guide, web-based tutorial, and this MOA, and updates to these requirements;

(e) Ensure that all Users performing verification procedures have contact information for the SAVE Program and SAVE Monitoring and Compliance;

(f) Ensure all Users perform any additional verification procedures the SAVE Program requires and/or the registrant requests after the User Agency initiates a request for verification;

(g) Use any information provided by DHS-USCIS under this MOA solely for the purpose of determining the eligibility of persons applying for the benefit issued by the User Agency and limit use of such information in accordance with this and all other provisions of this MOA;

(h) Comply with the requirements of the Federal Information Security Management Act (FISMA (PL-107-347), Title III, Section 301) and OMB guidance as applicable to electronic storage, transport of records between agencies, and the internal processing of records received by either agency under the terms of this MOA;

(i) Safeguard such information and access methods to ensure that it is not used for any other purpose than described in this MOA and protect its confidentiality, including ensuring that it is not disclosed to any unauthorized person(s) without the prior written consent of DHS-USCIS;[1]

---

[1] Each registrant seeking access to information regarding himself/herself may do so by submitting a written signed request to DHS-USCIS. Instructions for submitting such requests may be found on the Freedom of Information/Privacy Act page of www.uscis.gov.

4

(j) Comply with the Privacy Act, 5 U.S.C. Section 552a, and other applicable laws, regulations, and policies, including but not limited to all OMB and DHS privacy guidance, in conducting verification procedures pursuant to this MOA, and in safeguarding, maintaining, and disclosing any data provided or received pursuant to the MOA;

(k) Comply with federal laws prohibiting discrimination against registrants and discriminatory use of the SAVE Program based upon the national origin, color, race, gender, religion, or disability of the registrant, including but not limited to the National Voter Registration Act, 42 U.S.C. 1973gg et seq., as amended; the Help America Vote Act, 42 U.S.C. 15301 et seq., as amended; the Voting Rights Act, 42 U.S.C. 1973 et seq., as amended; and the Civil Rights Act, 42 U.S.C. 1971, 1974, as amended;

(l) Create standardized correspondence to request that a registrant provide a Naturalization Certificate or Certificate of Citizenship to complete SAVE verification and submit that correspondence to SAVE for approval prior to use with registrants;

(m) Provide all registrants who do not verify as a citizen under the terms of the MOA with adequate written notice that their citizenship could not be verified and the information necessary to contact DHS-USCIS (see attachment 1: Fact Sheet, which is subject to revision and reposting on the SAVE Website and Online Resources) so that such individuals may obtain a copy of their Naturalization Certificate or Certificate of Citizenship or correct their records in a timely manner, if necessary;

(n) Provide all registrants who are not verified as citizens based solely or in part on the SAVE response with the opportunity to use the User Agency's existing process to appeal the denial and to contact DHS-USCIS to correct their records prior to a final decision, if necessary; and

(o) Refrain from using SAVE, or assisting any person or entity, to comply with the employment eligibility verification requirements of section 274A of the Immigration and Nationality Act, 8 U.S.C. Section 1324a.

(2) Monitoring and Compliance.

(a) Provide the SAVE Program and SAVE Monitoring and Compliance with the current e-mail, U.S postal service address, physical address, name and telephone number of the User Agency authorized representative for any notifications, questions or problems that may arise in connection with the User Agency's participation in SAVE and with notification of changes in the benefit offered by the User Agency;

(b) Notify the SAVE Program and SAVE Monitoring and Compliance immediately whenever there is reason to believe a violation of this MOA has occurred;

(c) Notify the SAVE Program and SAVE Monitoring and Compliance immediately whenever there is reason to believe an information breach has occurred as a result of User

5

Agency action or inaction pursuant to Office of Management and Budget (OMB) Memorandum M-07-16, "Safeguarding Against and Responding to the Breach of Personally Identifiable Information";

(d) Allow SAVE Monitoring and Compliance to monitor and review all records and documents related to the use, abuse, misuse, fraudulent use or improper use of SAVE by the User Agency, including, but not limited to original registrant consent documents required by the Privacy Act, 5 U.S.C. Section 552a or other applicable authority;

(e) Allow SAVE Monitoring and Compliance to conduct desk audits and/or site visits to review User Agency's compliance with this MOA and all other SAVE-related policy, procedures, guidance and law applicable to conducting verification and safeguarding, maintaining, and disclosing any data provided or received pursuant to this MOA;

(f) Allow SAVE Monitoring and Compliance to perform audits of User Agency's User Ids use and access, SAVE Training Records, SAVE financial records, SAVE biographical information, system profiles and usage patterns and other relevant data;

(g) Allow SAVE Monitoring and Compliance to interview any and all User Agency SAVE system users and any and all contact persons or other personnel within the User Agency regarding any and all questions or problems which may arise in connection with the User Agency's participation in SAVE;

(h) Allow SAVE Monitoring and Compliance to monitor system access and usage and to assist SAVE users as necessary to ensure compliance with the terms of this MOA and the SAVE Program requirements by its authorized agents or designees; and

(i) Take corrective measures in a timely manner to address all lawful requirements and recommendations on every written finding including but not limited to those of SAVE Monitoring and Compliance regarding waste, fraud, and abuse, and discrimination or any misuse of the system, non-compliance with the terms, conditions and safeguards of this MOA, SAVE Program procedures or other applicable law, regulation or policy.

(3) Reimbursement.

(a) Pay the transaction prices provided in the attached current standard billing rates, which along with methods of payment are subject to change upon prior written notification to the User Agency. Each year, the User Agency will obligate funds sufficient to reimburse DHS-USCIS under a current appropriation upon execution of the attached USCIS Anticipated Collections from Non-Federal Sources Addendum;

(b) Pay in full within 30 days of the invoice date. The User Agency will pay any applicable sales, use, excise, and like taxes, where required by law, that are stated on each invoice. Regardless of payment type, the User Agency will clearly indicate the High Level Identifier with remittance;

6

(c) If the User Agency pre-pays for its usage, it shall submit the entire committed amount before being allowed access to VIS; and

(d) Promptly discuss and resolve issues and questions with DHS-USCIS regarding payments. Delinquent payments shall be handled in accordance with the Debt Collection and Improvement Act of 1996, 31 U.S.C. Section 3701. Interest on all unpaid balances shall be charged at the rate of the current value of funds to the United States Treasury effective on the date of the invoice. The rate is the Treasury tax and loan rate. It is published annually or quarterly by the Secretary of the Treasury in the Federal Register and the Treasury Fiscal Requirements Manual Bulletins. Handling charges will accrue at monthly rates of $5.00 for each of the first two months of delinquency and $10.00 for each month thereafter. In addition to interest and handling charges, if DHS-USCIS does not receive payment within 90 days of the invoice, 6% per annum additional interest will be assessed. Charges will be computed from the date of the invoice and will accrue monthly with the applicable interest and handling charges. In the case of any late payment, the amount received will be applied in this sequence: (1) to any accrued penalty and handling charges: (2) to any accrued interest; and (3) to outstanding principal. Failure to make timely payment may result in termination of services.

## V. POINTS OF CONTACT.

USCIS SAVE Program MS 2620, U.S. Citizenship and Immigration Services, Department of Homeland Security, Washington, DC 20529-2620, (888) 464-4218, Attn: SAVE Operations. E-mail: SAVEregistration@dhs.gov.

USCIS SAVE Monitoring and Compliance MS 2640, U.S. Citizenship and Immigration Services, Department of Homeland Security, Washington, DC 20529-2640, (888) 464-4218. E-mail: SAVE.monitoring@dhs.gov.

USER AGENCY : Don Wright, General Counsel, N.C. State Board of Elections, P.O. Box 27255, Raleigh, N.C. 27611-7255. (919) 715-5333. don.wright@ncsbe.gov. The alternative contact would be Veronica Degraffenreid, Elections Liaison, N.C. State Board of Elections, P.O. Box 27255, Raleigh, N.C. 27611-7255. (919) 715-1830, veronica.degraffenreid@ncsbe.gov .

## VI. OTHER PROVISIONS.

(A) MOA Responsibilities. Only authorized employees, agents, or designees of DHS-USCIS and the User Agency will carry out the requirements of this MOA. In carrying out these responsibilities, they will operate within the scope of applicable regulations, specifically delegated authorities, the program authorities and funding limitations and terms and conditions of this MOA.

(B) Determining Benefit Eligibility. This MOA is limited to the provision of verification services. DHS-USCIS will verify limited citizenship and immigration status information, but will not recommend to the User Agency whether to issue the benefit. The DHS-

7

USCIS response is not intended to be, and should not be construed as, an opinion on the part of DHS-USCIS or the United States regarding any right or benefit under any program administered by the User Agency. The User Agency has the responsibility to determine the registrant's eligibility for the benefit.

(C) Criminal Penalties.

(1) DHS-USCIS reserves the right to use information from the User Agency for any purpose permitted by law, including, but not limited to, the prosecution of violations of Federal administrative or criminal law.

(2) The User Agency acknowledges that the information it receives from DHS-USCIS is governed by the Privacy Act, 5 U.S.C. Section 552a(i)(1), and that any person who obtains this information under false pretenses or uses it for any purpose other than as provided for in this MOA may be subject to criminal penalties.

(D) Third Party Liability.

(1) Each party to this MOA shall be solely responsible for its own defense against any claim or action by third parties arising out of or related to the execution and/or performance of this MOA, whether civil or criminal, and retain responsibility for the payment of any corresponding liability.

(2) Nothing in this MOA is intended, or should be construed, to create any right or benefit, substantive or procedural, enforceable at law by any third party against the United States, its agencies, officers, or employees or the User Agency.

(E) Disputes. Disagreements on the interpretation of the provisions of this MOA that cannot be resolved between the DHS-USCIS program office and the User Agency point of contact should be provided in writing to the authorized officials at both agencies for resolution. If settlement cannot be reached at this level, the disagreement will be elevated to the next level in accordance with DHS-USCIS procedures for final resolution.

(F) Conflicts. This MOA, its attachments and addenda constitute the full MOA on this subject between DHS-USCIS and the User Agency. Any inconsistency or conflict between or among the provisions of this MOA, will be resolved in the following order of precedence: (1) this MOA and (2) other documents incorporated by reference in this MOA, i.e., the USCIS Anticipated Collections from Non-Federal Sources Addendum, and standard billing rates.

(G) Severability. Nothing in this MOA is intended to conflict with current law or regulation or the directives of DHS, DHS-USCIS, or the User Agency. If a term of this MOA is inconsistent with such authority, then that term shall be invalid but, to the extent allowable, the remaining terms and conditions of this MOA shall remain in full force and effect. In the event of a conflict that prevents either party from fulfilling its obligations,

8

this MOA may be immediately canceled without providing the 30 day notice period referenced in Section IX.

(H) Assignment. The User Agency may not assign this MOA, nor may it assign any of its rights or obligations under this MOA. To the extent allowable by law, this MOA shall inure to the benefit of, and be binding upon, any successors to DHS-USCIS and the User Agency without restriction.

(I) Waiver. No waiver by either party of any breach of any provision of this MOA shall constitute a waiver of any other breach. Failure of either party to enforce at any time, or from time to time, any provision of this MOA shall not be construed to be a waiver thereof.

(J) Compliance with Other Laws. Nothing in this MOA is intended or should be construed to limit or affect the duties, responsibilities, and rights of the User Agency under the National Voter Registration Act, 42 U.S.C. 1973gg et seq., as amended; the Help America Vote Act, 42 U.S.C. 15301 et seq., as amended; the Voting Rights Act, 42 U.S.C. 1973 et seq., as amended; and the Civil Rights Act, 42 U.S.C. 1971, 1974, as amended.

## VII. EFFECTIVE DATE.

This MOA shall be effective when the DHS-USCIS authorized official and User Agency authorized official have both signed the MOA. This MOA shall continue in effect unless modified or terminated in accordance with the provisions of this MOA.

## VIII. MODIFICATION.

(A) This MOA is subject to periodic review by DHS-USCIS, its authorized agents or designees, and, if necessary, periodic modification and/or renewal to assure compliance with current law, policy, and standard operating procedure(s). This MOA and the attached USCIS Anticipated Collections from Non-Federal Sources Addendum constitute the complete MOA between the parties for its stated purpose, and no modification or addition will be valid unless entered into by mutual consent of both parties evidenced in writing and signed by both parties and appended to this agreement; and

(B) The User Agency may accomplish a unilateral administrative modification to add funds to the MOA, and either party may accomplish a unilateral administrative modification to change POC information. A written bilateral modification (i.e., agreed to and signed by authorized officials of both parties) is required to change any other term of this MOA.

## IX. TERMINATION.

Either party may terminate this MOA at any time by providing 30 days written notice of intent. DHS-USCIS, when feasible, will consult with the User Agency and attempt to

Rev. Ver. 08/21/2013

reconcile issues before terminating this MOA. Notwithstanding any other provision in the MOA, DHS-USCIS may suspend or terminate this MOA without prior notice if deemed necessary because of a requirement of law or policy, upon a determination by DHS-USCIS that there has been a breach of system integrity or security by the User Agency or a failure by the User Agency to comply with established procedures or legal requirements, including but not limited to failure to pay.

Written notices shall be sent to the addresses of the POCs listed herein and shall be effective upon receipt. Either party may change its POC by written notice to the other party.

The foregoing, in conjunction with the referenced and incorporated attachments, constitutes the full agreement on this subject between DHS-USCIS and the User Agency. This MOA supersedes all previous agreements governing the provision of verification services. Those agreements are explicitly acknowledged to be null and void.

The undersigned represent that they are authorized to enter into this MOA on behalf of DHS-USCIS and the User Agency, respectively.


**Alissar K. Rahi**
**Chief, SAVE Program**
**U.S. Citizenship and Immigration Services**
**Department of Homeland Security**

9/10/13
**Date**

**Kim Strach**
**Executive Director**
**N.C. State Board of Elections**

9/9/13
**Date**

10

Rev. Ver. 08/21/2013

# Post-Election Audit Report

April 21, 2017

## General Election 2016



**BACKGROUND**

The N.C. State Board of Elections (NCSBE) is an independent and bipartisan agency charged with oversight of elections in North Carolina. Advances in database technology and data quality and the formation of an in-house investigative team now allow the agency to develop audits that flag irregularities for review by investigators. These "post-election integrity audits" compare voter and election records with various government databases to identify potentially ineligible voters and irregularities, ranging from unintentional violations to intentional voter fraud and elections tampering. **[Appendix 1: Audit Descriptions]**

Conducting integrity audits requires NCSBE to walk an extremely tight line: Preserving processes that ensure broad access to the polls while preventing unlawful participation. Data cannot tell the whole story and audit results must be analyzed carefully by those who know the limitations of individual data sources. Data analysts work alongside trained investigators with prior experience in state and federal law enforcement to review cases before drawing conclusions or involving prosecutors.

State law requires our agency to investigate "frauds and irregularities in elections" and to report violations to the attorney general or district attorneys. **[Appendix 2: G.S. § 163-22(d)]**

NCSBE takes seriously its uniquely independent position to address allegations of fraud in the state through responsible, data-driven investigations. In 2015, this agency created a formal Investigations Division — one of a few of its kind in the nation — to review allegations related to elections and refer them to prosecutors when warranted by evidence.

State and federal elected officials, journalists and everyday citizens have requested information regarding cases of fraud or investigations following the 2016 elections. **[Appendix 3: Congressional Letter]**

Rather than providing information on a one-off basis, NCSBE staff prepared this report, which is intended to provide an overview of audits, findings and investigations related to the 2016 general election in North Carolina, while offering context necessary to avoid misinterpretation. Where possible, this report also provides numbers of voters who investigators are reviewing or who investigators have concluded were not eligible to participate.

Irregularities occur in small percentages in nearly every election, and North Carolina is not immune to this. Administrative error and misunderstanding should be distinguished from systemic manipulation or intentional fraud. However, NCSBE understands that whether an irregularity is administrative, unintentional or intentional, the end result is an ineligible vote that dilutes votes lawfully cast by eligible voters. ***Even assuming all ineligible ballots identified in this report were cast for the prevailing candidate, no races -- statewide or local -- would have had a different outcome than the one already certified by the state.***

**SUMMARY**

Nearly 4.8 million N.C. voters participated in the 2016 general election, the largest number in state history. It is important to recognize that suspected cases of ineligible voters casting ballots and/or committing fraud represent a tiny fraction of that number.

The following data points summarize the results of post-election audits from the 2016 general election:

- **441 open cases of voting by suspected active felons.** The State Constitution disqualifies current felons from voting until their sentence is completed, including probation or parole. Investigators were able to rule out more than 100 voters initially flagged as ineligible through the audit, further supporting the need for investigative review of data audits. These new processes are being implemented to ensure those serving felony sentences do not remain on the voter rolls and that all registrants are checked against the current felons' database at the time of registration. New processes fill gaps in the list maintenance process outlined in G.S. § 163-82.14(c).
- **41 non-citizens with legal status (green card, etc.) cast ballots.** The State Constitution only permits U.S. citizens to register and to vote. The audit pairing state and federal databases identified an additional 34 voters who provided documents showing they *are* U.S. citizens. Investigators continue to review 61 additional records.
- **24 substantiated cases of double-voting initiated through tips and data audits.** An initial audit identified a few dozen additional voter records that remain under review, though administrative errors by poll workers can lead to voter history being assigned to the wrong people; this may lead to false positives in audits that can only be detected by more detailed review.
- **Two cases of voter impersonation referred to prosecutors.** NCSBE is conducting additional review using death data and double-voting audits to identify whether additional cases should be investigated. Of the two cases referred, one involves voting by mail, and the other involves voting in person. Both involve family members voting in the place of a recently deceased loved one, forgery of the deceased voter's signature, and subsequent admissions to investigators. **[Appendix 4: Admission Letters]**
- **Irregularities affecting absentee by-mail voting in Bladen County.** The State Board voted unanimously late last year to refer an investigation into suspected criminal activity to federal prosecutors.
- **No evidence of ballot stuffing or equipment tampering.** NCSBE was among the first states to partner with the U.S. Department of Homeland Security in an effort last year to prevent cyber hacking. A separate audit of voting systems logs presented no evidence of administrative fraud, including in Durham County (where an investigation in the March primary was referred to local prosecutors).

**[Appendix 5: Breakdown of Voting Irregularities by Type, Party Affiliation of Voters]**

All numbers above are subject to change based on ultimate investigative findings.

**A provisional ballot audit resulted in 428 ballots of eligible voters being counted that would not otherwise have counted.** The audit was performed to ensure uniformity and compliance with election laws among the 100 county boards of election. **[Appendix 1: Audit Descriptions]**

## FELONS

Under G.S. § 163-275(5), it is a Class I felony "for any person convicted of a crime which excludes the person from the right of suffrage, to vote . . . without having been restored to the right of citizenship."

NCSBE initiates investigations into possible cases of felons voting through a system of data audits followed by investigator review, referrals from county boards of elections and tips from the public.

In late January 2017, NCSBE sent letters to suspected felon voters identified through data audits, notifying recipients that they may have illegally voted and that their registrations would be canceled in 30 days unless they objected in writing and presented evidence that they are not active felons. *See* G.S. §§ 163-82.14(c)(3) and 163-82.14(c) **[Appendix 6: Sample Letter to Suspected Felon Voters]**

Some suspected felons provided information showing they were not active felons (they had completed their sentences, been convicted of a misdemeanor or received a deferred prosecution, for example), and were eligible to vote. Others told investigators that they did not know they had lost their voting rights upon conviction.

Currently, 441 files of suspected felon voters remain open after an initial screening and contacts or attempted contacts with the voters.

Investigators have begun referring investigation reports regarding felons to local prosecutors. To date, 16 substantiated cases from the 2016 general election have been referred to district attorneys. The remaining 425 are expected to be referred when investigations are complete. Under state law, felon voting is a strict liability offense, and thus a felon may be convicted of a crime even if he or she does not know that voting while serving an active sentence is wrongful.

Updated voter lists help prevent individuals from unintentional violations. An individual may, for instance, legally register to vote before becoming a felon and then appear at the polls while on probation. Such a person may not understand they are ineligible. NCSBE has reexamined its registration and list maintenance processes and is taking significant steps to discourage unlawful participation by current felons. NCSBE's efforts include:

- **Working with public safety officials and the court system to ensure that convicted felons are expressly notified that they lose their voting rights upon conviction**, and regain them only after completing their sentence, including probation and parole. Certain suspects claimed they were never informed of the restriction. An initial review of associated plea agreements and contact with probation personnel indicate there is room to improve education around voting rights. **[Appendix 7: Letter to DPS/AOC on Felons]**
- **Increasing data-sharing between local election officials to ensure a felon removed in one county does not re-register in another county, unless his or her sentence is complete.** Though the past system followed the requirements of G.S. § 163-82.14(c), a gap in the legacy voting data system may have allowed some active felons to register or to re-register without being detected. **Additional felons who did not vote in the general election were recently removed from the voter rolls, closing that gap.** These removals followed the notice sent to felons by mail and waiting period required under state law. Fixing the gap and educating affected voters will reduce the opportunity for unintentional violations. It also will improve the likelihood of successful prosecutions against willful offenders.
- **Updating elections software to check felon status at the time of registration.** The improved system is being coded and will roll out statewide this summer, substantially improving the maintenance efforts through current technologies and new data-sharing relationships.
- **Adding checkboxes to voter forms to ensure participants are aware of voter qualifications**, including the restriction on current felons. **[Appendix 8: New Voter Forms]**
- **Educating the public about voting requirements** through NCSBE website, outreach events, news releases, social media and other means.

---

## NON-CITIZENS

The N.C. Constitution allows only U.S.-born and naturalized citizens to register and vote. It is unlawful for a non-citizen to register or vote in a state or federal election.

A separate post-election audit and post-audit investigation using state and federal databases identified non-U.S. citizens suspected of casting ballots in the general election. Upon receipt of a letter from NCSBE, 41 of these individuals acknowledged they were not U.S. citizens. **[Appendix 9: Sample Letter to Possible Non-U.S. Citizen Voters].** The investigation into these cases, including interviewing voters, is ongoing.

All cases involve documented non-citizens who were admitted into the country lawfully. All individuals subject to this audit were matched to the Department of Homeland Security's database using information obtained from the N.C. Division of Motor Vehicles (DMV).

NCSBE research shows the 41 non-citizen voters originally came from 28 different countries. **[Appendix 10: Breakdown of Non-U.S. Citizen Voters by Country of Origin]**

This audit, detailed in Appendix 1, identified 61 additional voters who did not respond to the letter, and investigations into those cases continue as well. And 34 voters, tagged by the same audit, subsequently provided proof of citizenship, highlighting the fact that data matches alone are not sufficient to verify citizenship or to take action against the voters without follow-up investigations.

Information obtained from those who are not citizens illustrates the complexity of this work. A number of non-citizens said they were not aware that they were prohibited from voting. Interviews and evidence show that some non-citizens were misinformed about the law by individuals conducting voter registration drives or, in at least one documented case, by a local precinct official. One registrant in her 70s has lived in the United States for more than 50 years and believed that she was a citizen because she had been married to a U.S. citizen.

Investigations on non-citizen cases also have revealed the complexities of immigration law and citizenship status. For instance, some individuals achieve citizenship as a matter of law through "derived citizenship" as the child of a naturalized citizen, though paperwork showing that changed status is only available if requested and official databases may not reflect the correct status. An Application for Certificate of Citizenship costs $1,170. Individual contact with affected registrants has also illustrated the limitations of the data. Even where data from the Division of Motor Vehicles, the U.S. Department of Homeland Security and the voter rolls matched exactly, a high proportion of flagged individuals were citizens. **[Appendix 1: Audit Descriptions].** For this reason, it is important to take a case-by-case approach to these matters.

As with felons, education and understanding of state law appear to be the primary problem. Consequently, warnings on voter registration forms and voting documents are being reviewed to improve their effectiveness. **[Appendix 8: Revised Voter Forms]**. NCSBE is working with the Division of Motor Vehicles to more clearly indicate that registrants must be U.S. citizens. Additionally, NCSBE is developing additional poll worker training to address the nuances with terms like "permanent resident" and "green card" so that poll workers are better equipped to assist voters who are uncertain about their eligibility.

## DOUBLE VOTERS & IMPERSONATION

So-called double voters violate state and federal law by voting more than one time in a single election. A suspect may do so by voting multiple times within the same jurisdiction or in different jurisdictions. NCSBE is currently investigating 24 substantiated cases of double-voting from the 2016 general election.

North Carolina maintains a strong system that checks for this behavior throughout voting, whether through the mail, at early voting locations, or in the precinct on Election Day. However, variations in voter information or human error can allow a double voter to go undetected until more nuanced investigation is performed. Some violators appear to be "testers" trying to find holes in the system. Others claim their property ownership in multiple jurisdictions should allow them to vote in each, and others brush past the law to support their candidate by any means necessary. Additionally, a case that initially appears to be a double voter — an individual who votes twice — may actually be a case of voter impersonation — an individual who casts a ballot using the identity of another person.

Detecting double voting and voter impersonation is a time-intensive process. Database matching is not enough, as administrative errors can lead to voter history being assigned to the wrong person — such as when a poll worker checks off the wrong name on the poll book. Instead, data is only the starting point for cases that ultimately involve live interviews and signature analyses. NCSBE has begun that process on possible in-state double voting cases in 2016. This initial review of NC voter registration records indicates that there are a few dozen possible additional cases of double voting; however, this process is still in its preliminary stages and staff have not yet completed review of voter documents to determine whether the match was due to administrative error rather than illegal voting.

NCSBE rarely encounters verified cases of voter impersonation, though two cases are being referred to prosecutors from the election last fall. In one instance, a widow voted by mail after allegedly forging her husband's signature in the presence of relatives. In the second instance, a daughter allegedly presented in person to vote in the name of her deceased mother. The suspects in each case indicated that they were motivated out of a desire to carry out their loved one's voting wishes. **[Appendix 4: Admission Letters]**. NCSBE is conducting additional audits using state and federal death databases and screening algorithms to review 19 cases in which records indicate a date of death earlier than the date on which records indicate that person voted. An initial review of the voter registration documents indicates that a number of these are likely cases of mistaken identity rather than voter fraud where, for example, the death record was for a "John Smith Sr." and the voter record was for a "John Smith Jr."

While no audit exists to catch all possible cases of voter impersonation, double voter and deceased voter audits may detect such cases. State law puts additional deterrents in place. They include requiring identification documents from (1) voters whose information cannot be verified or who wish to register and vote on the same day during the early voting period, (2) requiring voters to state their name and address, and (3) requiring

two witness signatures or a notarial certificate on absentee return envelopes.[1]

Also, since 2014, NCSBE has used data from the Interstate Crosscheck Program as a tool to help identify voters who vote in more than one state in the same election. Administered by the Kansas Secretary of State's office, the program identifies possible duplicate registrations among states and provides evidence of possible double voting. NCSBE recently received the program's data for 2016 and will examine it in the coming months.

## NEXT STEPS

NCSBE continues to investigate voting irregularities from the 2016 general election and will refer cases to prosecutors where appropriate. Findings from post-election audits and subsequent investigations allow NCSBE to pinpoint which policies are best suited to improving electoral integrity in the state. For example, because this agency knows that many irregularities occurred because of a lack of information and education, we know to direct our efforts to better educating registrants and those who help citizens register to vote. This agency stands ready to help policymakers, advocacy organizations, media representatives, and the general public understand the topic of voting irregularities and provide information that will help them draw accurate and appropriate conclusions.

This agency strongly cautions readers not to refer to each of these cases as "voter fraud." As stated earlier, "ineligible voters casting ballots" may be the result of unintentional or intentional conduct. Fraud, in most cases, is an intent crime that requires prosecutors to show that the voter knowingly committed a crime.

***The evidence suggests that participation by ineligible voters is neither rampant nor non-existent in North Carolina. Our audits suggest that in the 2016 general election, approximately 0.01% of ballots were cast by ineligible voters. Most incidents are isolated and uncoordinated, and detecting technical violations does not always prove purposefully unlawful conduct. Our work indicates that ineligible voters are not isolated to one political party or any geographical region of the state.***

When people do vote unlawfully, either out of ignorance or to perpetrate a fraud, NCSBE now has procedures in place to detect and investigate those incidents and refer potential criminal cases to prosecutors where warranted. North Carolina has made tremendous advances in data analysis and investigation tactics, and NCSBE remains committed to improving elections administration responsibly by integrating new data streams into its processes, where appropriate. The report reflects our agency's commitment to public transparency, the rule of law, and our mission to promote access to the polls and the vigilance necessary to preserve the credibility of electoral outcomes.

---

[1] A federal court enjoined additional identification and registration requirements under S.L. 2013-381 on July 29, 2016.


# APPENDIX 1

## Audit Descriptions

### Overview

The following audits are designed to ensure election integrity by maintaining accurate voter rolls and proper oversight of election processes. Audits take various forms and are crafted to identify data anomalies that could indicate potential issues or problems, while supporting the N.C. State Board of Elections' goal of uniformity and compliance across 100 counties.

The audits have detected instances in which ineligible voters are suspected of casting ballots in the 2016 general election. NCSBE has developed a thorough process to investigate these cases and, when warranted, refer them to prosecutors across the state to consider criminal charges. NCSBE understands that some of these cases will be prosecuted and others will not, based on the unique circumstances of each case.

It is important to note that data used to identify suspected ineligible voters, like all data, is not perfect and matches require further analysis and investigation. This agency has taken great care to ensure that no one is publicly accused of any crime or referred to prosecutors without evidence that a crime was committed and that referral for prosecution is warranted.

### Felon Audit

Under state law, it is a Class I felony "for any person convicted of a crime which excludes the person from the right of suffrage, to vote . . . without having been restored to the right of citizenship."

After an election, the N.C. State Board of Elections checks the state's voter registration database against a list of current felons from the N.C. Department of Public Safety. This analysis cross-checks dates of birth and driver's license numbers between the two databases. When a match occurs, NCSBE reviews voting history to determine whether the individual may have cast a vote while serving a felony sentence.

If an active felon appears to have voted, NCSBE investigators then refer to an additional criminal records database, the Criminal Justice Law Enforcement Automated Data Services (CJLEADS), for further verification. The resulting matches from this second check may then be followed up with interviews, mailings and other traditional investigative methods.

If a current felon appears to be improperly registered, county boards of elections may proceed to remove the registration following notice and hearing, if requested, as required by state law.

### Non-U.S. Citizen Audit

The N.C. Constitution allows only U.S.-born and naturalized citizens to register and vote, and it is unlawful for a non-citizen to vote in a state or federal election. To identify non-U.S. citizens who may have cast ballots, NCSBE first checks voter records against N.C. Division of Motor Vehicles (DMV) data, which indicates whether a customer's driver's license contains a restriction code related to their non-citizen status. Other DMV tables are then cross referenced to determine if evidence of citizenship was provided in a subsequent visit to the DMV.



The resulting matches are run through the U.S. Department of Homeland Security's Systematic Alien Verification for Entitlements Program (SAVE) database, an information service for agencies to verify an individual's immigration status.

NCSBE has determined based on past experience that a match with the SAVE database is not a reliable indicator that a person is not a U.S. citizen because the database is not always updated in a timely manner and individuals who derived citizenship from their parents through naturalization or adoption may show up as non-citizens in SAVE.

Also, due to timing issues and the fact that DMV data is generally updated only when licenses are issued, DMV data alone is not reliable for this purpose either. **In fact, voters who appear to be non-citizens based on DMV data were confirmed to be U.S. citizens in the SAVE database 97.6 percent of the time.**

If SAVE indicates a voter is a non-citizen, NCSBE opens a case file and attempts to contact the voter to determine citizenship status through mailings and interviews. Because of the unreliability of citizenship data, voters who appear to be non-citizens — where both data sources indicate non-citizenship status — are not removed from the rolls, absent independent confirmation that they are not citizens. In fact, approximately three-quarters of those who subsequently provide proof of U.S. citizenship continued to appear as non-citizens in the SAVE database.

**Manual Entry Audit**

County election officials occasionally must enter election results by hand directly into the vote tabulation software. This may occur, for example, due to a media card failure. This audit can catch inadvertent mistakes in transcribing numbers, as well as purposeful manipulation of data. After the 2016 election, the NCSBE identified all manual entries that occurred in November across the state. Data analysts then reached out to the counties to identify the reasons for the manual entries. NCSBE determined all manually entries were done for valid purposes. In the future, manual entry audits will include an automated process able to detect transcription errors in real time as results are entered by hand. This change, still under development, will help ensure the accuracy of manual entries made in future elections.

**Voter History Audit**

When voters check in at polling places, they fill out authorization to vote (ATV) forms or one-stop applications during early voting. This results in a voter history record for each individual. When ballots are run through tabulators, tabulation software provides election return data that identifies the number of ballots cast. This audit compares the number of ATV forms and one-stop applications with the number of physical ballots cast. Those two numbers should generally match, but may be *slightly* off for valid reasons, such as if a voter checks in and then decides not to vote.

This audit is designed to identify certain problems or fraud, such as ballot stuffing, fraudulent manual entries, tampering with media cards or certain ballot coding issues.

**Provisional Ballot Audit**

Voters cast provisional ballots when questions arise about their qualifications or eligibility to vote in certain contests. Those ballots are held aside pending research by county boards of elections as to whether they should be counted.



This audit is aimed at ensuring all 100 counties make uniform decisions that comply with election laws when counting provisional ballots. It compares provisional voter data to several data sources, including the DMV database, an incomplete queue that catalogs registration attempts that were deemed incomplete and the current registration database as of Election Day. Data analysts execute matching algorithms to determine whether provisional voters were eligible vote in the counties where they presented to vote. Additionally, two web services are used to geocode the voters' addresses to confirm that they resided in the county at the time they voted. Audit results are sent to county boards of elections, which analyze them and, where appropriate, amend their canvasses to reflect any changes.

For the 2016 general election, this audit resulted in 428 voters statewide whose provisional ballots were counted in accordance with current election law. Those ballots wouldn't have been counted otherwise.



# APPENDIX 2

## G.S. § 163-22(d)

**G.S. § 163-22.  Powers and duties of State Board of Elections.**

. . . .

(d)      The State Board of Elections shall investigate when necessary or advisable, the administration of election laws, frauds and irregularities in elections in any county and municipality and special district, and shall report violations of the election laws to the Attorney General or district attorney or prosecutor of the district for further investigation and prosecution.



# APPENDIX 3

## Congressional Letter

### Congress of the United States
#### Washington, DC 20515

January 25, 2017

The Honorable Kim Westbrook Strach
Executive Director
State Board of Elections
P.O. Box 27255
Raleigh, NC 27611

The Honorable Josh Stein
North Carolina Attorney General
Attorney General's Office
9001 Mail Service Center
Raleigh, NC 27699-9001

Dear Executive Director Strach and Attorney General Stein:

Thank you for your service in the critical work of helping ensure that elections across the country are free, fair, and administered in a way that upholds the fundamental tenets of the United States Constitution. We are writing given recent claims of voter fraud and its potential impact on our nation's elections. To investigate these claims, we are seeking information regarding confirmed incidents of voter fraud.

To assist in our inquiry, we request that you provide a list of all specific cases in which either of your offices has determined that an individual who cast a vote in the federal elections held in November 2016 was legally prohibited from doing so. For each specific case, please include the following information:

1) the identity of the individual who cast the prohibited vote;
2) the date on which the prohibited vote took place;
3) the polling place where the prohibited vote occurred;
4) the specific legal reason the individual's vote was prohibited; and
5) the result of the individual's prosecution, if any.

Please include in this list all cases in which the state has determined that a prohibited vote was cast, regardless of whether a prosecution was initiated or concluded. Please feel free to provide joint or separate responses.

We request this information by February 22, 2017. Please contact Karen Kudelko of Ranking Member Cummings' staff at (202) 225-5051, Khalil Abboud with Ranking Member Brady's staff at (202) 225-2061, or Amy Miller Pfeiffer with Assistant Democratic Leader Clyburn's staff at (202) 226-3210 with any questions.

PRINTED ON RECYCLED PAPER



The Honorable Kim Westbrook Strach
The Honorable Josh Stein
Page 2

Sincerely,

Elijah E. Cummings
Ranking Member
Committee on Oversight and
 Government Reform

Robert A. Brady
Ranking Member
Committee on House
 Administration

James E. Clyburn
Assistant Democratic
 Leader

cc:     The Honorable Jason Chaffetz
        Chairman, House Committee on Oversight and Government Reform

        The Honorable Gregg Harper
        Chairman, Committee on House Administration

# APPENDIX 4.1

## Admission Letter (Case 1)



**From:**
**Sent:** Friday, February 03, 2017 10:11 AM
**To:**
**Subject:**

I, [redacted] personally completed both ballots.

**From:** [redacted]@ncsbe.gov>
**To:**
**Sent:** Friday, February 3, 2017 10:02 AM
**Subject:** RE: [redacted]

Both Ballots

**From:**
**Sent:** Friday, February 03, 2017 10:01 AM
**To:** [redacted]@ncsbe.gov>
**Subject:** Re: [redacted]

I, [redacted] wife of [redacted], marked the ballot.

**From:** [redacted]@ncsbe.gov>
**To:**
**Sent:** Friday, February 3, 2017 9:48 AM
**Subject:** RE: [redacted]

[redacted].

On the first ballot that was done at the hospital who marked the ballot?
On the second ballot that was retrieve from the trash who marked that ballot?

**From:**
**Sent:** Thursday, February 02, 2017 9:10 PM
**To:** [redacted]@ncsbe.gov>
**Subject:** Re: [redacted]

Entered  your email address incorrectly!

**From:**
**To:** [redacted]@nbsbe.gov" [redacted]@nbsbe.gov>
**Sent:** Thursday, February 2, 2017 12:15 PM
**Subject:** [redacted]

1



Thank you for this opportunity to clarify the absentee ballot of my late husband, ████████████ I apologize for my misunderstanding of the process.

My husband was hospitalized Sept 11, 2015. Because of the seriousness of his condition, my brother, ████████████████████████ suggested we apply for absentee ballots, just in case he wasn't home in time to vote. We had always voted in person and were not even aware this was a possibility. Since I was basically living in ████ hospital room at ████, I asked ████ to request the absentee ballots for us. By the time the ballots arrived, my husband's condition had further deteriorated, but his desire to vote had not diminished. With family at his bedside, we witnessed his nod to vote (Republican) and signed to that effect. It was my misunderstanding of the written directions that left his signature line blank. I did not make a copy of our ballots, so I cannot look back to see what I misunderstood, but we left it unsigned on purpose, thinking our witness of his will and intent was sufficient. I took our ballots to the post office to be sure the proper postage was affixed, and the ballots were mailed.

After my husband died, another ballot arrived at our home, which I thought strange, but just a mistake, since our ballots had already been mailed. I discarded the ballot to the recycling bin. Then I received several reminders to be sure to complete and return the ballot. When I mentioned this to my brother, he advised me to call the Board of Elections in████████ County. I was told that my ballot had been received, but that my husband's ballot was unsigned and another had been sent for his signature. Using a flashlight, my brother and I retrieved the discarded ballot out of the recycling bin on the curb. The next day, I completed the ballot on my husband's behalf, according to his wishes, and signed his name. I thought that was what I was supposed to do. I was not trying to be deceitful or fraudulent, as I thought I had authority to sign his signature as his wife, and as executor of his estate. I even drove to the Board of Elections and delivered it in person, explaining that it was to clarify the first ballot.

I am glad to know that voter fraud is being diligently investigated. I am very distressed that my ignorance, but good intentions, have caused such a problem. Maybe in less stressful circumstances I would not have made this mistake. I respectfully request that you consider these facts, and our history as reputable, law-abiding citizens.

████████████████

2



**From:**
**Sent:** Wednesday, February 08, 2017 11:00 AM
**To:**
**Subject:**

Hi Mr. ▮▮▮, good morning. Thank you for your call and condolences today regarding my blood sister ▮▮▮ and her late husband (my brother-in-law) ▮▮▮. When ▮▮▮ was first hospitalized at ▮ and ▮▮▮ was staying with him full-time, I suggested they apply for absentee ballots. Several times in the past while my children were off at college I had requested absentee ballots to be sent to my two sons and daughter to be sure they had the opportunity to vote. ▮▮▮ called and asked me to request both ballots for them because she was at the hospital ▮▮ and did not have her computer nor a convenient way to request the ballots. Both expected to be back home in time to vote on election day but to be sure they wanted to get their absentee ballot submitted in case they were unable to be home. I spoke (by phone and visits) numerous times with ▮▮▮ about politics and he was very excited about the upcoming election. Unfortunately, while be treated and making progress in his recovery, he suddenly suffered some critical setbacks and unexpectedly passed away. With best regards, ▮▮▮▮

1


# APPENDIX 4.2

## Admission Letter (Case 2)

**From:** ▮▮▮▮▮▮▮▮▮
**Sent:** Friday, February 03, 2017 3:26 PM
**To:** ▮▮▮▮▮▮
**Subject:** Re: NCSBE Case #▮▮▮▮

My phone number is ▮▮▮▮▮▮
▮▮▮▮▮

Sent from my iPhone

On Feb 3, 2017, at 1:47 PM, ▮▮▮▮▮▮▮▮▮ <▮▮▮▮▮▮▮@ncsbe.gov> wrote:

▮▮▮▮

I am very sorry for your loss.
Thank you for your cooperation in this matter.
Please forward a telephone number if we have to contact you.
If you have any additional question please feel free to contact me.
Thank you

**▮▮▮▮▮▮/Investigator**
North Carolina State Board of Elections
441 N. Harrington Street
Post Office Box 27255
Raleigh, NC 27611
▮▮▮▮▮ office | 919.715.0135 fax
www.ncsbe.gov

<image002.png>

**From:** ▮▮▮▮▮▮▮▮
**Sent:** Friday, February 03, 2017 11:16 AM
**To:** ▮▮▮▮ @ncsbe.gov>
**Subject:** NCSBE Case #▮▮▮▮

My mother ▮▮▮▮▮▮ at 89 was a tremendous Donald Trump fan. She donated to his campaign, watched all his debates and news involving his campaign on Fox news. She was so excited about voting for him and at every opportunity told everyone else to vote for him to save our country.

1



My mother had AFIB which would cause her heart rate and blood pressure to rise to dangerous levels with the risk of stroke. I had printed out a State Absentee Ballot Request Form on Saturday, October 22, 2016 and told her to fill it out and mail it in so that she could vote in the event she was unable to go and cast her vote. She said, "ok and if anything happens you have my power of attorney and you be sure to vote for Donald Trump for me". The following day she had a massive stroke and passed away on October 26. 2016.

This was devastating to me because my dad, brother and sister were deceased and I was the only one left in my family. As election day approached, all I could hear were her words "if anything happens you have my power of attorney and you be sure to vote for Donald Trump for me"! On November 3rd I took a copy of the power of attorney, which no one asked for, and honored her request and voted on her behalf. It was the last thing I could do for her and I felt excited to do that for her.

My mother was alive during the absentee period and if she had received the ballot in time she would have been able to vote. Please understand that my actions were in no way intended to be fraudulent but were done during my grief and an effort to honor my mothers last request and I knew that one vote from this 89 year old lady would not affect the outcome of the election anyway.

2





**RECEIVED**

MAR 2 7 2017

STATE BOARD OF ELECTIONS

DAVID LEARNER
DISTRICT ATTORNEY

*State of North Carolina*
*General Court of Justice*
*Twenty-Fifth Prosecutorial District*

CATAWBA COUNTY JUSTICE CENTER
P.O. BOX 566
NEWTON, NC 28658
(828) 695-6110
(828-695-6111 FAX

Investigator ███████████
NC State Board of Elections
PO Box 27255
Raleigh, NC 27611-7255

Re:     NCSBE Case number: 2016-165

Dear Investigator ███████,

The 25th Prosecutorial District will decline to prosecute the above referenced case, taking all facts and evidence into consideration along with the lack of criminal history for Ms. ██████.

Ms. ██████ voted for her mother believing that her power of attorney and honoring her mother's dying wish was not a fraudulent act. Her mother was alive during the absentee period and if she had received the ballot in time she would have been able to legitimately cast her vote. Ms. ██████ actions were done during a time of grief and mourning and in an effort to honor her mother's dying wish.

The 25th Prosecutorial District believes it to be in the best interest of justice to decline prosecution of NCSBE Case Number 2016-165. If you have any questions or need additional information, please don't hesitate to contact me.

Sincerely,

Stacey London, MPA
Administrative Assistant
25th Prosecutorial District
828-695-6196



# APPENDIX 5

## Breakdown of Voting Irregularities by Type, Party Affiliation of Voter

| Party Affiliation | Double Voter | % | Felons | % | NonCitizens | % | Voter Impersonation | % | Total | % |
|---|---|---|---|---|---|---|---|---|---|---|
| Democrat | 14 | 58% | 292 | 66% | 20 | 49% | | 0% | 326 | 54% |
| Libertarian | | 0% | 4 | 1% | | 0% | | 0% | 4 | 1% |
| Republican | 5 | 21% | 73 | 17% | 11 | 27% | 2 | 100% | 91 | 15% |
| Unafiliated | 5 | 21% | 72 | 16% | 10 | 24% | | 0% | 87 | 14% |
| **Total** | **24** | **100%** | **441** | **100%** | **41** | **100%** | **2** | **100%** | **508** | **100%** |

\*   The above reflects affiliation as of Election Day 2016
\*\*  On Election Day 2016, statewide registration by party as follows:
    Democrat (39.5%), Republican (30.2%), Libertarian (0.4%), and Unaffiliated (29.9%)



| County | Double Voter* | Felons | Non-Citizens | Voter Impersonation | Total |
|---|---|---|---|---|---|
| ALAMANCE | 2 | 13 | | | 15 |
| ALLEGHANY | | | 1 | | 1 |
| ANSON | | 2 | | | 2 |
| ASHE | | 1 | | | 1 |
| BEAUFORT | | 7 | 1 | | 8 |
| BERTIE | | 1 | | | 1 |
| BLADEN | | 1 | | | 1 |
| BRUNSWICK | | 3 | | | 3 |
| BUNCOMBE | | 7 | 1 | | 8 |
| CABARRUS | | 6 | 2 | | 8 |
| CALDWELL | 1 | 6 | | | 7 |
| CARTERET | | 5 | | 1 | 6 |
| CASWELL | | 2 | | | 2 |
| CATAWBA | 1 | 4 | | 1 | 6 |
| CHATHAM | | 2 | | | 2 |
| CHEROKEE | | 1 | | | 1 |
| CLAY | 2 | 1 | | | 3 |
| CLEVELAND | | 5 | | | 5 |
| COLUMBUS | | 2 | 1 | | 3 |
| CRAVEN | 1 | 10 | 1 | | 12 |
| CUMBERLAND | 1 | 20 | 3 | | 24 |
| CURRITUCK | 1 | 1 | | | 2 |
| DAVIDSON | | 4 | 1 | | 5 |
| DAVIE | | 1 | | | 1 |
| DUPLIN | | 3 | | | 3 |
| DURHAM | 1 | 30 | 3 | | 34 |
| EDGECOMBE | | 8 | | | 8 |
| FORSYTH | | 20 | 2 | | 22 |
| FRANKLIN | | 2 | | | 2 |
| GASTON | | 11 | 1 | | 12 |
| GATES | | 1 | | | 1 |
| GRANVILLE | | 2 | | | 2 |
| GREENE | | 1 | | | 1 |
| GUILFORD | 6 | 49 | 8 | | 63 |
| HALIFAX | | 9 | | | 9 |
| HARNETT | | 4 | | | 4 |
| HAYWOOD | | 2 | | | 2 |
| HENDERSON | 1 | | | | 1 |
| HERTFORD | | 3 | | | 3 |
| HOKE | | 5 | 2 | | 7 |
| JOHNSTON | | 8 | 1 | | 9 |
| JONES | | 3 | | | 3 |
| LENOIR | | 2 | | | 2 |
| LINCOLN | | 1 | | | 1 |

| | | | | | |
|---|---|---|---|---|---|
| MCDOWELL | | 1 | | | 1 |
| MECKLENBURG | | 14 | 1 | | 15 |
| MONTGOMERY | | 3 | | | 3 |
| MOORE | 1 | 5 | | | 6 |
| NASH | | 4 | 1 | | 5 |
| NEW HANOVER | | 16 | 1 | | 17 |
| ONSLOW | | 1 | | | 1 |
| ORANGE | 1 | 1 | | | 2 |
| PAMLICO | | 5 | | | 5 |
| PASQUOTANK | | 2 | | | 2 |
| PENDER | | 6 | 1 | | 7 |
| PERSON | | 3 | | | 3 |
| PITT | | 13 | | | 13 |
| POLK | | 1 | | | 1 |
| RANDOLPH | | 6 | 1 | | 7 |
| RICHMOND | 1 | | | | 1 |
| ROBESON | | 5 | | | 5 |
| ROCKINGHAM | | 6 | | | 6 |
| ROWAN | | 3 | | | 3 |
| RUTHERFORD | | 2 | | | 2 |
| SAMPSON | | 3 | | | 3 |
| SCOTLAND | | 5 | | | 5 |
| STANLY | | 2 | | | 2 |
| STOKES | | 2 | | | 2 |
| SURRY | | 3 | 1 | | 4 |
| UNION | | 7 | 2 | | 9 |
| VANCE | | 2 | | | 2 |
| WAKE | 1 | 32 | 3 | | 36 |
| WARREN | 1 | 3 | | | 4 |
| WAYNE | 3 | 12 | | | 15 |
| WILKES | 1 | | | | 1 |
| WILSON | | 4 | 2 | | 6 |
| **Grand Total** | **26 records (24 voters)** | **441** | **41** | **2** | **510 records (508 voters)** |

\* Two suspected double voters are assigned to two different registration
records, each from a different county.



# APPENDIX 6

## Letter to Suspected Felon Voters



*Mailing Address:*
P.O. Box 27255
Raleigh, NC 27611-7255

Phone: (919) 733-7173
Fax: (919) 715-0135

**KIM WESTBROOK STRACH**
*Executive Director*

[Date]

**TO:**   [Voter Name]
        [Mailing Address]
        [Mailing City, State, ZIP]

**RE:**   NOTICE OF REMOVAL DUE TO FELONY CONVICTION;

This office has received felony conviction records indicating that you are currently an active felon and that as such, you may have illegally voted in [County] in the November 8, 2016 General Election.

Persons who are currently serving a sentence for a felony conviction are not qualified to vote in North Carolina. Active felons include persons serving prison time or those on probation or parole for a felony conviction and who have not completed all aspects of their sentence, including completion of any period of parole or probation. It is a felony to vote if you are not qualified to do so. By this letter, please be notified that: **If not already cancelled, as a convicted felon, your current voter registration in [County] will be cancelled in 30 days.**

If you disagree with the finding that you are an active felon and you object to the removal of your name from the list of registered voters, you must **object in writing within 30 days of this notice.** If you object, the chairman of the County Board of Elections will enter a challenge to your voter registration. You will then be notified to appear at a challenge hearing. The above referenced notice and other relevant records received by our office of your felony conviction will be introduced as evidence at the hearing.

If you are in a *deferred prosecution* status for a felony, please contact our office immediately and provide us with these details, including the name and telephone number of your current probation officer and the attorney who represented you. Persons who are on *deferred prosecution* may not be subject to removal and may avoid removal from the voter registration rolls.

As a convicted felon, your rights of citizenship are restored automatically under the provisions of North Carolina General Statute § 13-1 only upon discharge from your felony sentence, including periods of probation or parole, or a full pardon. At that time, provided that you are under no other active felony convictions, you will be qualified to vote. Upon completion of your sentence, you must submit a **new voter registration form** to the County Board of Elections office where you reside.

Again, if you believe that the information contained in this letter concerning your voter eligibility and/or voting activity is incorrect, you must object in writing to this office **within 30 days of this notice.** Please mail your written objection and any documentation to the attention of NCSBE Investigator Matthew Martucci at P.O. Box 27255, Raleigh, NC 27611-7255. It is also recommended that you contact Investigator Martucci at (919) 715-1827.

Thank you for your prompt attention to this matter.

*6400 Mail Service Center ▪ Raleigh, NC 27699-6400*
*441 N. Harrington Street ▪ Raleigh, NC 27611-7255*



# APPENDIX 7

## Letter to DPS/AOC on Felons



*Mailing Address:*
P.O. Box 27255
Raleigh, NC 27611-7255

Phone: (919) 733-7173
Fax: (919) 715-0135

March 3, 2017

*VIA E-MAIL*

The Honorable Erik A. Hooks
Secretary, Department of Public Safety
erik.hooks@nccrimecontrol.org

The Honorable Marion R. Warren
Director, Administrative Office of the Courts
marion.r.warren@nccourts.org

Re:  Uniform notice to felons regarding voting rights in North Carolina.

Dear Secretary Hooks and Judge Warren:

As you are each aware, the State Board of Elections maintains a statewide voter registration system used by election officials across North Carolina. In recent years, data-sharing relationships among states and with federal agencies have enhanced our efforts to ensure the integrity of the voter rolls, including the removal of voters who have become ineligible due to felony conviction. We are presently engaged in a comprehensive audit of the agency's list maintenance process surrounding felons on the rolls, and I am encouraged by the plan set in motion two weeks ago by technical staff from our three agencies and the Government Data Analytics Center. Thank you for sharing in our mission to ensure the integrity of elections.

Beyond the promising future in our data-sharing relationship, I want to make you aware that the State Board's in-house investigations staff have become aware that the information provided to felons serving active sentences does not appear to be standard and often excludes references to the loss of voting rights. This issue arises at the referral phase of our investigations, when some district attorneys express understandable concern that a felon who has voted may not have been aware of the unlawfulness of his actions. Although individuals are required to affirm that they are not serving an active felony sentence both when registering and presenting to vote, we have received feedback that not all voters read this language prior to signing. Establishing that the subject of an investigation may have knowingly and willfully violated N.C. election laws prohibiting felons from voting will support successful prosecutions.

We are in the process of finalizing an investigation into a number of felons suspected of voting unlawfully in the 2016 general election, and it is my hope that we can take proactive steps to ensure notice is provided to felons that they are not eligible to vote in North Carolina until they have completed their sentences, including probation. Educating active felons about the law could help reduce the volume of infractions, while making prosecution of willful offenders easier for our state's dedicated district attorneys. It would also align with G.S. § 163-82.20A, which requires

*441 N. Harrington Street ▪ Raleigh, NC 27601-7255*



that our agencies create programs and procedures to inform felons about the restoration of their voting rights. Among other suggestions, we are seeking improvements and additions to passive methods of informing felons of their voting ineligibility, such as the use of informational pamphlets and verbal warnings, to more active written warnings that are presented to felons orally and in writing and which are then signed by the felon acknowledging their understanding.

If you are willing, I would like to arrange a conference call between appropriate personnel at our agencies for the week of March 20th. Thank you for your consideration, and I look forward to our continued coordination on behalf of the voters of this State.


Sincerely,

Kim Westbrook Strach
Executive Director, State Board of Elections


# APPENDIX 8

## Revised Voter Forms

**AUTHORIZATION TO VOTE FORM**
**North Carolina**

ATV # ____________

VR PARTY ________ PRIMARY PARTY ________

**FRAUDULENTLY OR FALSELY COMPLETING THIS FORM IS A CLASS I FELONY UNDER CHAPTER 163 OF THE NC GENERAL STATUTES.**

**A Voter's Certification of Voting Qualifications**

If ID required, check the type of current ID shown:

- ☐ Photo ID
- ☐ Government Check
- ☐ Bank Statement
- ☐ Paycheck
- ☐ Utility Bill
- ☐ Other Government Doc

Registration Date:

AGE

VRN:

ELECTION:
PCT:
VTD:

I, [INSERT VOTER NAME], certify that:

- ☐ I am a registered voter in this county and I shall have resided at the address noted above for **30 days** immediately prior to this election.
- ☐ I am a United States Citizen.
- ☐ I am at least 18 years of age, or will be by the date of the general election.
- ☐ *For partisan primary elections ONLY:* I am registered [PARTY NAME] and I will receive a [PRIMARY PARTY] ballot.
- ☐ I understand that it is a felony to vote more than one time in an election.
- ☐ I have not been convicted of a felony, or if I have been convicted of a felony, I have completed my sentence, including any probation or parole.

**X** ______________________ SIGNATURE OF VOTER

______________________ OFFICIAL'S INITIALS

**B Election Day Transfer** (Use this section to send a voter from their old polling place to their new polling place after moving.)

This person is hereby authorized to vote in his/her precinct after executing this form.

Old Precinct # ____________ Name of New Polling Place: ____________

New Precinct # ____________ Address of New Polling Place ____________

Party Affiliation On Record ____________ **X** ______________________ SIGNATURE OF PRECINCT OFFICIAL

**C Curbside Affidavit** (Affidavit of person voting outside voting place or enclosure.)

STATE OF NORTH CAROLINA, COUNTY OF ____________

I do solemnly swear (or affirm) that I am a registered voter in ____________ precinct. That because of age or physical disability, I am unable to enter the voting place to vote in person without physical assistance. That I desire to vote outside the voting place or enclosure. **I understand that a false statement as to my condition will be in violation of North Carolina law.**

____________ DATE ______________________ VOTER ADDRESS

**X** ______________________ SIGNATURE OF VOTER **X** ______________________ SIGNATURE OF PRECINCT OFFICIAL

| **OFFICIAL USE ONLY** | Station | | Voting Method | | Voting Date/Time | | V2017.04 |
|---|---|---|---|---|---|---|---|
| | Site | | Transaction | | Operator Name | | |

## ONE STOP APPLICATION
**NORTH CAROLINA**
**COUNTY OF**

_____

_____

**FRAUDULENTLY OR FALSELY COMPLETING THIS FORM IS A CLASS I FELONY UNDER CHAPTER 163 OF THE NC GENERAL STATUTES.**

**A** **Voter's Certification of Voting Qualifications**

VRN:

REG:  
PARTY:  
REG DATE:  
PCT:  

PRIMARY:  
BALLOT:  
AGE:  
VTD:  

*Mailing Address*

I, **[INSERT VOTER NAME]**, certify that:

☐ I am a registered voter in this county and I shall have resided at the address noted above for **30 days** immediately prior to this election.

☐ I am a United States Citizen.

☐ I am at least 18 years of age, or will be by the date of the general election.

☐ *For partisan primary elections ONLY:* I am registered **[PARTY NAME]** and I will receive a **[PRIMARY PARTY]** ballot.

☐ I understand that it is a felony to vote more than one time in an election.

☐ I have not been convicted of a felony, or if I have been convicted of a felony, I have completed my sentence, including any probation or parole.

**X** _____     _____
SIGNATURE OF VOTER                                    OFFICIAL'S INITIALS

**B** **Change or Verification of Name and Address** (Use this section to verify or change a voter's name or address in the registration records.)

New Name: _____         Former Name: _____

New Address: _____         Former Address: _____

New Mailing Address: _____         Former Mailing Address: _____

Have you lived here for 30 days or more? ☐ Yes ☐ No         I certify that I moved at least 30 days before this election to the new address.

If no, date moved: _____ / _____ / _____
                                         DAYTIME PHONE NO.

**X** _____
SIGNATURE OF PRECINCT OFFICIAL

**C** **Curbside Affidavit** (Affidavit of person voting outside voting place or enclosure.)

STATE OF NORTH CAROLINA, COUNTY OF _____

I do solemnly swear (or affirm) that I am a registered voter in _____ precinct. That because of age or physical disability, I am unable to enter the voting place to vote in person without physical assistance. That I desire to vote outside the voting place or enclosure. **I understand that a false statement as to my condition will be in violation of North Carolina law.**

_____         _____
DATE                                    VOTER ADDRESS

**X** _____     **X** _____
SIGNATURE OF VOTER                                    SIGNATURE OF PRECINCT OFFICIAL

| OFFICIAL USE ONLY | Board Approval Date: | | Board Signature: | | | |
|---|---|---|---|---|---|---|
| | Station | | Voting Method | | Voting Date/Time | | V2017.04 |
| | Site | | Transaction | | Operator Name | | |


# APPENDIX 9

## Sample Letter to Possible Non-U.S. Citizen Voters



NORTH CAROLINA
State Board *of* Elections

*Mailing Address:*
P.O. Box 27255
Raleigh, NC 27611-7255

Phone: (919) 733-7173
Fax: (919) 715-0135

February 16, 2017



RE:     Your voter registration in North Carolina.

Dear Mr./Ms. _____:

The State Board of Elections conducts routine audits following an election. During one of these audits, N.C. Division of Motor Vehicles (DMV) data indicated that you were not a citizen of the United States when you applied for or renewed your driver's license or state identification card. Information from the U.S. Department of Homeland Security (DHS) also indicated that you may not be a citizen of the United States. We understand these databases may not be current, and you may be a citizen of the United States.

In North Carolina only citizens of the United States may register to vote or to vote.[1] It is a crime for a non-citizen to vote in a state or federal election.[2]

**Please complete and return the enclosed *Admission or Denial of Non-U.S. Citizen Return Form* within (30) days of receiving this letter.** If you are a citizen of the United States, include a copy of an official document confirming your citizenship status. If your name has changed, be sure to provide documentation of that name change. You may mail, fax, e-mail or deliver the *Admission or Denial of Non-U.S. Citizen Return Form*.

Documents that may prove your citizenship within the United States include the following:

- **U.S. Birth Certificate.** If you cannot find your birth certificate, please contact the vital statistics office in the state or U.S. territory that originally issued your certificate.

- **U.S. Passport (booklet or card).** If you cannot find your U.S. Passport, please contact the U.S. Department of State at 1-877-487-2778 (TTY 1-888-874-7793) or visit the website at: http://travel.state.gov/passport/lost/lost_848.html

---

[1] *See* North Carolina General Statute § 163-55 and Article VI, Section 1 of the North Carolina Constitution.
[2] North Carolina General Statue § 163-275 and United States Code Title 18, Section 611.

*441 N. Harrington Street • Raleigh, NC 27611-7255*


- **Consular Report of Birth Abroad.** If you cannot find your U.S. Consular Certificate of Birth, please contact the U.S. Department of State at 1-877-487-2778 (TTY 1-888-874-7793) or visit the website at: https://travel.state.gov/content/passports/en/abroad/events-and-records/birth/replace-or-amend-consular-report-of-birth-abroad.html

- **Certificate of Naturalization or Certificate of Citizenship.** If you cannot find your Certificate of Naturalization or Certificate of Citizenship, or believe that there is some problem with your records that needs to be corrected by the United States Citizenship and Immigration Services (USCIS), please refer to the enclosed *Information for Registrants: Verification of Citizenship Status and How to Obtain Your Document or Correct Your Record with USCIS*. You can make a copy of your naturalization or citizenship certificate and send it to this agency.

If you return the *Admission or Denial of Non-U.S. Citizen Return Form* stating that you are <u>not</u> a citizen of the United States, you will be removed from the voter registration rolls.

If you believe an error has occurred regarding your identity or citizenship status, you have the right to ask for a hearing. The citizenship requirements, however, cannot be waived or ignored by those at a hearing. Remember, it is a crime for a non-citizen to vote in an election in North Carolina.

If you do not respond to this letter and return the *Admission or Denial of Non-U.S. Citizen Return Form* within thirty (30) days of receipt, your case may be referred to your local county board of elections, which may enter a challenge to your voter registration. If the challenge is successful, your voter registration will be cancelled.

For information regarding this matter or to submit your completed *Admission or Denial of Non-U.S. Citizen Return Form*, you may contact our agency at the following:

| **Mailing Address:** | **Street Address:** | **Phone:** | (919) 733-7173* |
|---|---|---|---|
| N.C. State Board of Elections | 441 N. Harrington St. | **Fax:** | (919) 715-0135 |
| Attn: Joan Flemming | Raleigh, NC 27603 | **E-mail:** | joan.fleming@ncsbe.gov |
| P.O. Box 27555 | | | |
| Raleigh, NC 27611-7255 | | *Please ask for the undersigned | |

Thank you for your cooperation in this matter.

Sincerely,


Joan Fleming
Chief Investigator, North Carolina State Board of Elections

Enclosures:  *Admission or Denial of Non-U.S. Citizen Form* & self-addressed return envelope
*Information for Registrants: Verification of Citizenship Status and How to Obtain Your Document or Correct Your Record with USCIS*

---



**U.S. Department of Homeland Security**
*U.S. Citizenship and Immigration Services*
*Verification Division*
*Washington, DC 20024*



**U.S. Citizenship and Immigration Services**

# Fact Sheet

### Information for Registrants: Verification of Citizenship Status and
### How to Obtain Your Document or Correct Your Record with USCIS

Many federal, state and local agencies verify the immigration or citizenship status of benefit applicants to ensure that only qualified aliens or naturalized and derived citizens receive benefits. These agencies verify immigration or citizenship status by using the Systematic Alien Verification for Entitlements (SAVE) Program of the U.S. Department of Homeland Security, U.S. Citizenship and Immigration Services (USCIS).

The voter registration agency in your state has submitted information to the SAVE Program for verification of your citizenship. Because the SAVE Program cannot confirm your citizenship status based upon information provided by the agency, you must be given an opportunity by the voter registration agency to provide the correct documentation or correct your records with USCIS and/or appeal the denial of your voter registration. Please note that there are a number of reasons why the SAVE Program may not be able to verify your citizenship, e.g., the SAVE Program can only verify naturalized or derived citizens, to the extent that a derived citizen received an official determination on citizenship by USCIS. The inability of the SAVE Program to verify your citizenship does not necessarily mean that you are not a citizen of the United States and are ineligible to vote.

If you need a replacement of your Naturalization Certificate or Certificate of Citizenship or believe that the SAVE Program response to the voter registration agency did not provide accurate information about your citizenship status and you need to make corrections to your citizenship record, please contact USCIS by using one of the following methods:

1. **File a Form N-565 to obtain a replacement of your Naturalization Certificate or Certificate of Citizenship.** The Form N-565 and instructions for filing can be found at: http://www.uscis.gov/files/form/n-565.pdf and http://www.uscis.gov/files/form/n-565instr.pdf

2. **Schedule an appointment for an in-person interview at a local USCIS office to correct your record.** You may schedule an appointment at a local USCIS office at the InfoPass website, http://infopass.uscis.gov, or by calling the National Customer Service Center, **1-800-375-5283.** Scheduling an appointment is the fastest way to correct your records. We recommend that you bring to your appointment this Fact Sheet, documentation evidencing your citizenship status, and any information provided by the voter registration agency concerning why your citizenship status could not be verified.

3. **Submit a request in writing to correct your record.** If you know the information that needs

Rev. Ver. August 14, 2012



to be corrected in your record, you may submit a request to <u>correct</u> your records to the Freedom of Information Act/Privacy Act (FOIA/PA) Office at the following address:

Privacy Act Amendment
U.S. Citizenship and Immigration Services National Records Center
FOIA/PA Office
P.O. Box 648010
Lee's Summit, MO 64064-8010

**We recommend that you include the following information in your submission, if available:**

- State that you are being denied voter benefits
- Information that is inaccurate
- Proposed change(s) to the record
- Date and place of birth
- A return address
- Copies of your immigration or DHS citizenship documents
- Reason it is inaccurate
- A-File number and/or the full name
- Notarized signature of the registrant
- Other information to assist locating the record

If you do not know the information you need to correct, you may submit a written request to <u>obtain</u> your records by submitting Form G-639, *FOIA/PA Request*. This form is available from the nearest USCIS office or online at <u>http://www.uscis.gov/files/form/g-639.pdf</u>. You should use the address specified above, but mark the envelope *"Privacy Act Request"* rather than *"Privacy Act Amendment."*

Rev. Ver. August 14, 2012



# APPENDIX 10

## Breakdown of Non-U.S. Citizen Voters by Country of Origin

| Country of Origin | Count |
|---|---|
| Canada | 2 |
| China, Peoples Republic | 1 |
| Costa Rica | 2 |
| Dominican Republic | 1 |
| El Salvador | 1 |
| Germany | 2 |
| Guyana | 1 |
| Haiti | 2 |
| Honduras | 1 |
| Israel | 1 |
| Italy | 2 |
| Jamaica | 1 |
| Korea | 1 |
| Liberia | 2 |
| Malaysia | 1 |
| Mexico | 4 |
| Netherlands | 1 |
| Nicaragua | 2 |
| Nigeria | 2 |
| Panama | 1 |
| Philippines | 1 |
| Poland | 1 |
| Australia | 1 |
| Senegal | 1 |
| Sierra Leone | 1 |
| United Kingdom | 1 |
| Ukraine | 1 |
| Vietnam | 1 |
| UNKNOWN | 2 |
| **Grand Total** | **41** |

# NORTH CAROLINA
## State Board of Elections & Ethics Enforcement

*Mailing Address*:
P.O. Box 27255
Raleigh, NC 27611-7255

Phone: (919) 814-0700
Fax: (919) 715-0135

## NUMBERED MEMO 2018-09

| | |
|---|---|
| **TO:** | County Boards of Elections |
| **FROM:** | Kim Strach, Executive Director |
| **RE:** | **Preservation of Documents from 2016 General Election and Ballot Secrecy** |
| **DATE:** | September 7, 2018 |

### Retention of 2016 General Election Records

In light of recent subpoenas issued by the U.S Attorney's Office for the Eastern District of North Carolina, county boards of elections are instructed to preserve documents described below. A number of key terms in the below descriptions are exceedingly vague. Out of an abundance of caution, when in doubt, do not delete, alter, or destroy any document that may reasonably fall within any descriptions below:

Any and all voter registration applications and/or other documents, as identified below, that were submitted to, filed by, received by, or maintained by the North Carolina State Board of Elections from January 1, 2010, through August 30, 2018, within any of the counties in North Carolina. To include, but not limited to:

1. Standard Voter Registration Application forms
2. Federal Post Card Applications (FPCA)
3. Federal Write-In-Absentee Ballots (FWAB)
4. One-Stop (Early Voting) application forms
5. Provisional Voting forms
6. N.C. Absentee Ballot Request forms
7. Any and all "Admission or Denial of Non-Citizen Return Form" that were generated by the North Carolina State Board of Elections, or were caused to be generated by the North Carolina Board of Elections, and/or the Ethics Enforcement Office.
8. Any and all Voter Registration Cancellation or Voter Revocation forms that have been generated by the North Carolina State Board of Elections, and/or the Ethics Enforcement Office.

> Any and all poll books, e-poll books, voting records, and/or voter authorization documents, and executed official ballots (including absentee official ballots), that were submitted to, filed by, received by, and/or maintained by the ▮▮▮ County Board of Elections from August 30, 2013 through August 30, 2018.

> Furthermore, we wish to clarify, especially for the County Boards, that the request for voting records and voting authorization documents would include, without limitation, all Absentee Applications and Certificates (including envelopes) for the time period specified in the subpoenas.

This retention request expands the scope of Numbered Memo 2018-04. Due to the broad scope of the subpoena issued to the State Board, all 100 county boards of elections are instructed to preserve the above documents.

## Secrecy of Voted Ballots

State law protects the right of voters to a secret ballot. County boards of elections are reminded that G.S. § 163A-1105(e) prohibits the disclosure of voted ballots or paper or electronic records of individual voted ballots absent a court order. It is a Class 1 misdemeanor for you or anyone with access to voted ballots or records to knowingly disclose these documents without a court order.

## State Board Order

The State Board's Order regarding representation by the Attorney General's office is enclosed. No additional action by the county boards or county attorneys is required at this time.

STATE OF NORTH CAROLINA
WAKE COUNTY

BEFORE THE STATE BOARD OF ELECTIONS & ETHICS ENFORCEMENT

| | |
|---|---|
| IN THE MATTER OF: SUBPOENAS  )<br>ISSUED BY THE U.S. ATTORNEY'S  )<br>OFFICE FOR THE EASTERN  )<br>DISTRICT OF NORTH CAROLINA  ) | **ORDER** |

THE STATE BOARD OF ELECTIONS & ETHICS ENFORCEMENT ("State Board") held a public meeting on September 7, 2018, after considering certain grand jury subpoenas issued on or about August 31, 2018 to the State Board and forty-four county boards of elections (the "Subpoenas") within the jurisdiction of the U.S. Attorney's Office for the Eastern District of North Carolina.

Upon the unanimous vote of its members, and pursuant to its supervisory authority over elections administration under G.S. §§ 163A-741(a) and 163A-745, the State Board hereby **ORDERS**:

> The Attorney General of North Carolina is authorized to take steps necessary to quash the Subpoenas and any associated subpoenas on behalf of the State Board and all affected county boards of elections.

This the seventh day of September, 2018.

J. Anthony Penry, Chair
STATE BOARD OF ELECTIONS
& ETHICS ENFORCEMENT



*Mailing Address:*
P.O. Box 27255,
Raleigh, NC 27611

(919) 814-0700 or
(866) 522-4723

*Fax:* (919) 715-0135

**NUMBERED MEMO 2019-01**

**TO:**        All County Boards of Elections

**FROM:**     Kim Westbrook Strach, Executive Director

**RE:**        Response to Subpoenas Issued by the U.S. Attorney's Office for the Eastern District of North Carolina

**DATE:**     February 6, 2019

## Production of Records

On August 31, 2018, the U.S. Attorney's Office for the Eastern District of North Carolina issued identical grand jury subpoenas to each of the county boards of elections within its jurisdiction seeking millions of documents including all voting records over a period of years, including ballots that would have to be redacted. The Office also issued a grand jury subpoena to the State Board of Elections & Ethics Enforcement ("State Board") for some of the same records and additional information for all North Carolina's voters maintained within our central system in Raleigh.

On September 7, 2018, I issued Numbered Memo 2018-09 requiring every county board to preserve the documents described in the subpoenas. The Numbered Memo also informed you that, the State Board's members had unanimously exercised their supervisory authority over elections administration under N.C. Gen. Stat. §§ 163A-741(a) and 163A-745 to request that the Attorney General of North Carolina take the steps necessary to quash the subpoenas to the counties and to the State Board (collectively, the "Subpoenas").

The U.S. Attorney's Office agreed to extend the compliance date for responding to the Subpoenas until January 14, 2019. Now, the Attorney General's office has directed the State Board to acquire the records associated with 289 individuals who were previously registered in counties within the Eastern District. These records will be transmitted to the U.S. Attorney's Office in response to the Subpoenas. It is our understanding that this limited production is all that is required at this time.

Accordingly, the State Board Office will be reaching out, individually, to each of the counties in the Eastern District, identifying the records your county may need to retrieve and review so our agency can produce the responsive records on your behalf. Initial indications suggest that more than two-thirds of the prior registrants were already inactive in 2017; that for twenty-two of the affected counties, there were five or fewer registrations; and that no registrants were immediately identified in Bertie, Columbus, Dare, Granville, Hyde, Jones, Northampton, Pamlico, Tyrrell, or Warren counties.

In response to the Subpoenas, the State Board of Elections is also providing registration records on approximately 500 individuals statewide who resided outside the Eastern District of North Carolina.

## Preservation of Records

Out of an abundance of caution, <u>Numbered Memo 2018-09</u> remains in effect for **<u>all county boards of elections in the State</u>**, and all records identified therein must be retained and preserved. <u>No additional action by the county boards or county attorneys is required at this time.</u>

# PUBLIC INTEREST
## ——— LEGAL FOUNDATION ———

VIA EMAIL

April 30, 2019

RECEIVED

MAY 0 3 2019

STATE BOARD OF ELECTIONS

Kim Westbrook Strach
Executive Director
North Carolina State Board of Elections
P.O. Box 27255
Raleigh, NC 27611-7255
Email: Kim.Strach@ncsbe.gov, Elections.SBOE@ncsbe.gov

**RE: Notice of NVRA Violation**

Dear Ms. Strach:

It has been nearly seven months since the North Carolina State Board of Elections (NCSBE) promised to produce voter list maintenance records originally requested from certain North Carolina county boards of elections pursuant to the records inspection provision of the National Voter Registration Act of 1993 ("NVRA"). 52 U.S.C. 20507(i). The requested records concern the actions county election officials have taken to identify and cancel registrations belonging to individuals who do not satisfy the citizenship requirements for voting.

To date, **we not have not received any responsive records from the NCSBE**, despite repeated assurances that production of records was imminently forthcoming.

This letter serves to notify that the **NCSBE is in violation of the NVRA for failure to permit inspection and photocopying of public records as required by 52 U.S.C. § 20507(i)**. Because these violations are ongoing and occurring within 30 days of an election for federal office,[1] the NVRA authorizes us to pursue immediate federal litigation to enforce the inspection requirements of the law. *See* 52 U.S.C. § 20510(b)(3). However, we are providing this letter with the hope that you will immediately remedy these violations and make litigation unnecessary.

**Background**

On September 10, 2018, we requested the opportunity to inspect or receive certain voter list maintenance records from the county boards of elections in Guilford, Forsyth, and Durham pursuant to the records inspection provision of the NVRA, 52 U.S.C. § 20507(i). In part, the request sought "[d]ocuments regarding all registrants who were identified as potentially not satisfying the citizenship requirements for registration" and "actions taken regarding the registrant's registration." A copy of the letter served on the Durham County Board of Elections is attached this request, for reference.

---

[1] The primary election for North Carolina's 9th Congressional District is scheduled to occur on May 14, 2019.

When we received no response to our requests, we notified each county board on October 1, 2018 that it was in violation of the NVRA, copying the NCSBE on the correspondence. That same day, the NCSBE wrote to us via email, explaining that it would "help facilitate a response to [the] recent records request[s]" made to Guilford, Forsyth, and Durham because "our agency likely houses some of the data responsive to your request." On October 9, 2018, we asked the NCSBE to provide the same records for the counties of Mecklenburg and Buncombe as well.

When asked for an update on the progress of the request 20 days later, the NCSBE stated, "We are still working on them and would hope to have a response to you some time in November." The NCSBE did not produce any records in November.

Cognizant that the NCSBE was facing uncertainty regarding the legality of its composition, we remained patient, and agreed to travel to NCSBE offices to conduct an in-person inspection of the requested records on January 11, 2019.

On or around January 9, 2019, the NCSBE contacted us via telephone to indicate that the scheduled in-person visit was not necessary because the NCSBE would begin production of records by the end of January. On January 9, 2019, the phone call was memorialized in an email, in which the NCSBE stated, "Working on the citizenship request now, per our discussion. I will send records for your additional request on a rolling basis as they are reviewed and redacted." The NCSBE did not produce any records by the end of January.

More than two months later, on April 10, 2019, we again wrote to the NCSBE to request an update on the progress of the requests. Later than day, the NCSBE responded via email, stating, "I will give you a full update and hopefully start providing responsive documents tomorrow or Friday." The NCSBE did not produce any records—let alone an "update"—by Friday, April 12, as promised.

As of the date of this letter, the NCSBE has not provided a substantive update on its progress or produced any records responsive to the request. It has now been **232 days** since we first requested access to public voter list maintenance records in the possession of North Carolina election officials.

**Violation of the National Voter Registration Act**

As explained in the September 10, 2018 requests (attached), the NVRA requires election officials to make available for public inspection "all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters." 52 U.S.C. § 20507(i). The requested records fall within the scope of this requirement.

Failure to permit public inspection or otherwise provide copies of these records is a violation of federal law for which the NVRA provides a private-right-of-action. 52 U.S.C. § 20510(b).

A primary election for federal office in North Carolina is scheduled for May 14, 2019.[2] For NVRA violations occurring within 30 days of an election for federal office, there is no curative period. 52 U.S.C. § 20510(b)(3). **If the NVRA violation described herein is not corrected immediately, the Foundation will pursue federal litigation to enforce its rights.** For any lawsuits initiated by a private party, an award of attorney's fees, expenses, and costs incurred are available under 52 U.S.C. § 20510(c).

As the state's chief election official for purposes of the NVRA, N.C. Gen. Stat. § 163A-6, the Executive Director of the NCSBE is copied on this correspondence. *See Voter Integrity Project NC, Inc. v. Wake Cty. Bd. of Elections*, 301 F. Supp. 3d 612, 617 n.4 (E.D.N.C. 2017).

Please direct all future correspondence to njohnson@publicinterestlegal.org.

Thank you for your service on this matter.

Sincerely,


Noel Johnson
Litigation Counsel
Public Interest Legal Foundation

CC:

Mr. Robert Cordle
Chairman
North Carolina State Board of Elections
P.O. Box 27255
Raleigh, NC 27611-7255

---

[2] https://s3.amazonaws.com/dl.ncsbe.gov/Elections/2019/District9Candidates.pdf.

# PUBLIC INTEREST
## —— LEGAL FOUNDATION ——

VIA EMAIL

September 10, 2018

Derek L. Bowens
Director
Durham County Board of Elections
PO Box 868
Durham, NC 27702
Email: elections@dconc.gov

**RE: NVRA public disclosure request**

Dear Disclosure Officer(s):

I am writing to request inspection or copies of records related to your office's voter list maintenance obligations under the National Voter Registration Act of 1993 (NVRA).

The National Voter Registration Act of 1993, 52 U.S.C. § 20501 *et seq.*, requires your office to make available for public inspection "all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters." 52 U.S.C. § 20507(i).

Pursuant to Section 20507(i) of NVRA, I request that your office reproduce or provide the opportunity to inspect the following:

1. Documents regarding all registrants who were identified as potentially not satisfying the citizenship requirements for registration from any official information source, including information obtained from the various agencies within the U.S. Department of Homeland Security, North Carolina Department of Motor Vehicles, and from the North Carolina State Board of Elections since January 1, 2006. This request extends to all documents that provide the name of the registrant, the voting history of such registrant, the nature and content of any notice sent to the registrant, including the date of the notice, the response (if any) of the registrant, and actions taken regarding the registrant's registration (if any) and the date of the action. This request extends to electronic records capable of compilation.

2. All documents and records of communication received by your office from registered voters, legal counsel, claimed relatives, or other agents since January 1, 2006 requesting a removal or cancellation from the voter roll for any reason related to non-U.S. citizenship. Please include any official records indicating maintenance actions undertaken thereafter.

3. All documents and records of communication received by your office from jury selection officials—state and federal--since January 1, 2006 referencing individuals who claimed

to be non-U.S. citizens when attempting to avoid serving a duty call. This request seeks copies of the official referrals and documents indicating where your office matched a claim of noncitizenship to an existing registered voter and extends to the communications and maintenance actions taken as a result that were memorialized in any written form.

Understanding that federal file retention laws may impact some disclosures, an optimal grouping of documents presented per registered voter disclosed would contain the following:

- The completed voter application form (redacted where necessary to prevent disclosures of claimed Social Security number and signature);

- Referral documents/transmissions for new or updated voter registration applications provided by state agencies charged with National Voter Registration Act (Motor Voter) duties;

- Records indicating the "voter profile" or "voter view" or similar feature provided within the North Carolina State Elections Information Management System (SEIMS) which details all information kept per voter, to include but is not limited to:
  - Full name on file (including previous names)
  - Date of birth
  - Voter ID number
  - Voter registration date (including previous dates of registration)
  - Date of last maintenance/update action
  - Reason code(s) for previous maintenance action(s)
  - County of registration
  - Detailed address information history (residential and mailing)
  - Political party designation history (if claimed/recorded)
  - Registration method history (e.g. self, NVRA agency transaction, third-party, etc.)
  - Assigned voting districts history
  - Election participation history in full
  - All internal memoranda stored within each "profile"

- All letters, postcards, and other mailings sent from your office to the voter in question with notations for types of postage or method of delivery indicated where possible;

- All letters, emails, logged phone calls, documents, and other communications from the voter in question to your office—including those communications from legal counsel or claimed relatives on their behalf—that is either affirmatively sent by the voter or in response to a mailing received by your office or other official entity;

- All documents your office may receive from federal entities to include but are not limited to the U.S. Department of Homeland Security/USCIS detailing inquiries regarding registered voters in your county and your responses given;

- All documents your office may generate upon request to the voter or federal agency concerned with immigration matters for the purpose of detailing a registration status

history and voting history;

- All documents and communications between your office and the registered voter in question with respect to pending immigration matters; and

- Any documents sent by your office to the voter to require that an affirmation of citizenship or noncitizenship be given in writing with responses included, where applicable.

If you wish to dispense with a public inspection and provide copies of these records instead, please send them to following address:

> 32 E. Washington Street
> Suite 1675
> Indianapolis, IN 46204

Should you need to contact me regarding this request, please contact me via email at lchurchwell@publicinterestlegal.org.

Thank you for your service on this matter.


Sincerely,

Logan Churchwell
Communications & Research Director
Public Interest Legal Foundation
lchurchwell@publicinterestlegal.org

UBLIC INTEREST
— LEGAL FOUNDATION —

E. Washington Street, Suite 1675
Indianapolis, IN  46204

INDIANAPOLIS IN 460

28 APR 2019 PM 6L


ADDITIONAL OUNCE · USA   USA FOREVER

Kim Westbrook Strach
Executive Director
North Carolina State Board of Elections
P.O. Box 27255
Raleigh, NC 27611-7255

27611-725555