IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:19-CV-248-BO

PUBLIC INTEREST LEGAL )
FOUNDATION, INC., )
        Plaintiff, )
v. ) O R D E R
 )
KAREN BRINSON BELL, in her official )
capacity as Executive Director of the North )
Carolina State Board of Elections, and )
NORTH CAROLINA STATE BOARD )
OF ELECTIONS, )
        Defendants. )

This cause comes before the Court on defendants' motions to dismiss[1] the amended complaint in its entirety. Plaintiff has responded, defendants have replied, and the matter is ripe for ruling. For the reasons that follow, the motions to dismiss are granted.

## BACKGROUND

Plaintiff filed this action against the North Carolina State Board of Elections (NCSBOE) seeking disclosure of public voting records pursuant to Section 8 of the National Voter Registration Act of 1993 (NVRA), 52 U.S.C. § 20507(i). NCSBOE moved to dismiss the complaint. Plaintiff thereafter filed an amended complaint, adding Bell as a defendant. Defendants Bell and NCSBOE filed the instant motions to dismiss the amended complaint pursuant to Rule 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure.

---

[1] The State Board of Elections filed a motion to dismiss, which defendant Bell joined. [DE 20 & 22].

The amended complaint alleges as follows. Plaintiff is a non-partisan, public interest organization that seeks to promote the integrity of elections nationwide through research, education, remedial programs, and litigation. Plaintiff regularly utilizes the NVRA's public disclosure provision as well as state and federal open records laws to gain access to records and data which plaintiff compiles and disseminates in accordance with its organizational mission.

Plaintiff alleges that more than nine months ago it requested access to public records maintained by the NCSBOE and that the NCSBOE has denied its request. Specifically, plaintiff requested records following the NCSBOE's issuance of a post-election audit report in April 2017 which stated that in the 2016 general election:

> 41 non-citizens with legal status (green card, etc.) cast ballots. The State Constitution only permits U.S. citizens to register and vote. The audit pairing state and federal databases identified an additional 34 voters who provided documents showing they are U.S. citizens. Investigators continue to review 61 additional records.

[DE 8 ¶ 29] (emphasis in original removed).

On September 10, 2018, Plaintiff sent letters to the county boards of elections for the counties of Durham, Guilford, and Forsyth seeking to inspect three broad categories of records: (1) documents regarding all registrants who were identified as potentially not satisfying the citizenship requirements for registration from any official information source, including the United States Department of Homeland Security and the North Carolina Department of Motor vehicles; (2) all documents and records of communication received by the boards of elections from registered voters, legal counsel, claimed relatives or other agents since January 1, 2006, requesting removal or cancellation from the voter role for any reason related to non-United States Citizenship; and (3) all documents and records of communication received by the boards of elections since January 1, 2006, from state and federal jury selection officials referencing individuals who claimed

2

to be non-U.S. citizens when responding to a jury summons. Plaintiff's request for records was later amended to include the same records from Buncombe and Mecklenberg counties.

The relevant county boards of elections were not responsive to plaintiff's requests, and thus plaintiff contacted the NCSBOE. After several months of communication between plaintiff and the NCSBOE, on May 3, 2019, plaintiff received a letter from then-counsel for the NCSBOE describing programs and activities conducted by the NCSBOE to perform registration list maintenance in regard to actual or suspected noncitizen registrants; the letter further explained that the NCSBOE would not allow plaintiff to inspect those records related to the programs and activities described in the letter. Despite continued efforts, plaintiff has not been permitted to inspect the records which it has sought to inspect. This suit followed.

## DISCUSSION

Defendants have moved to dismiss the first amended complaint pursuant to Rules 12(b)(1) and 12(b)(6) of the Federal Rules of civil Procedure.

Federal Rule of Civil Procedure 12(b)(1) authorizes dismissal of a claim for lack of subject matter jurisdiction. When subject matter jurisdiction is challenged, the plaintiff has the burden of proving jurisdiction to survive the motion. *Evans v. B.F. Perkins Co.*, 166 F.3d 642, 647-50 (4th Cir. 1999). "In determining whether jurisdiction exists, the district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." *Richmond, Fredericksburg & Potomac R.R. Co. v. United States*, 945 F.2d 765, 768 (4th Cir. 1991). To this end, "the nonmoving party must set forth specific facts beyond the pleadings to show that a genuine issue of material fact exists." *Id.* (citing *Trentacosta v. Frontier Pacific Aircraft Indus.*, 813 F.2d 1553, 1558-59 (9th Cir. 1987)).

3

A Rule 12(b)(6) motion tests the legal sufficiency of the complaint. *Papasan v. Allain*, 478 U.S. 265, 283 (1986). When acting on a motion to dismiss under Rule 12(b)(6), "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir.1993). A complaint must allege enough facts to state a claim for relief that is facially plausible. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Facial plausibility means that the facts pled "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged," and mere recitals of the elements of a cause of action supported by conclusory statements do not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

I. The NCSBOE is immune from suit.

"The Eleventh Amendment bars suit against non-consenting states by private individuals in federal court." *Bd. of Trustees of the Univ. of Ala. v. Garrett*, 531 U.S. 356, 363 (2001). This guarantee applies not only to suits against the state itself but also to suits where "one of [the state's] agencies or departments is named as the defendant." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984). The Court concludes that the NCSBOE is within the purview of Eleventh Amendment immunity. *See, e.g., Cooper v. N. Carolina State Bd. of Elections*, No. 5:08-CV-423-D, 2009 WL 9081691, at *9 (E.D.N.C. June 12, 2009). The Eleventh Amendment bars suit in federal court regardless of the nature of the relief that is sought, *Pennhurst*, 465 U.S. at 100, unless one of the limited exceptions, such as waiver or abrogation, applies. *See Edelman v. Jordan*, 415 U.S. 651, 673 (1974); *Seminole Tribe v. Florida*, 517 U.S. 44 (1996).

Plaintiff's argument that Congress abrogated state immunity for suits under the NVRA is unpersuasive. Two questions must be answered in the affirmative in order for Congress to have properly abrogated state sovereign immunity: (1) Congress must have unequivocally expressed its

4

intent to abrogate sovereign immunity, and (2) and in so doing Congress must have acted "pursuant to a valid exercise of power." *Green v. Mansour*, 474 U.S. 64, 68 (1985). Plaintiff has failed to demonstrate that Congress, in enacting the NVRA, has unequivocally expressed its intent to abrogate sovereign immunity. Indeed, the general authorization to bring suit in federal court provided in 52 U.S.C. § 20510(b)(2) "is not the kind of unequivocal statutory language sufficient to abrogate the Eleventh Amendment." *Seminole Tribe*, 517 U.S. at 56 (internal quotation and citation omitted). Accordingly, the Court concludes that the NCSBOE is immune from suit. *See also Krieger v. Loudon Cty.*, No. 5:13CV073, 2014 WL 4923904, at *3 (W.D. Va. Sept. 30, 2014), aff'd sub nom. *Krieger v. Virginia*, 599 F. App'x 112 (4th Cir. 2015).

II.     Plaintiff has failed to state a claim against Bell.

> The NVRA reflects the view of Congress that the right to vote "is a fundamental right," that government has a duty to "promote the exercise of that right," and that discriminatory and unfair registration laws can have a "damaging effect on voter participation" and "disproportionately harm voter participation by various groups, including racial minorities." Congress enacted the NVRA in order to "increase the number of eligible citizens who register to vote" in federal elections, "enhance[] the participation of eligible citizens as voters," "protect the integrity of the electoral process," and "ensure that accurate and current voter registration rolls are maintained."

*Project Vote/Voting for Am., Inc. v. Long*, 682 F.3d 331, 334 (4th Cir. 2012) (citing 42 U.S.C. §§ 1973gg(a) & (b), as amended 52 U.S.C. §§ 20507(i)(1)(a) & (b)). In furtherance of these goals, the NVRA requires states to establish methods of voter registration and a system for removal of improperly registered voters. 52 U.S.C. §§ 20503-20507.

To ensure compliance, the NVRA includes a public disclosure provision, which requires that election administration officials must "make available for public inspection . . . all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters." *Id.* § 20507(i)(1). Expressly exempted from the NVRA's public disclosure provision are "records relate[d] to a declination to

5

register to vote or the identity of a voter registration agency through which any particular voter is registered." *Id.* At bottom, the NVRA puts in place a uniform code for the registration of voters and the removal of voters from registered voter lists. *True the Vote v. Hosemann*, 43 F. Supp. 3d 693, 722 (S.D. Miss. 2014). Finally, the NVRA establishes a private right of action, subject to certain prerequisites. *Id.* § 20510(b).[2]

Voter registration applications are within the scope of the NVRA's public disclosure provisions. *Long*, 682 F.3d at 335-36 ("[T]he process of reviewing voter registration applications is a 'program' and 'activity.'"). However, as the district court in *Long* recognized, nothing in the NVRA requires that information contained in voter application records which is "uniquely sensitive and vulnerable to abuse" must be disclosed. *Project Vote/Voting For Am., Inc. v. Long*, 752 F. Supp. 2d 697, 712 (E.D. Va. 2010). On this ground, the Eastern District of Virginia court required that applicant social security numbers be redacted, and this limitation on public disclosure was upheld. Other courts have upheld similar redactions of sensitive information subject to abuse, such as telephone numbers, birth dates, and email addresses. *See generally Project Vote, Inc. v. Kemp*, 208 F. Supp. 3d 1320, 1345 (N.D. Ga. 2016).

In response to plaintiff's request, the NCSBOE has disclosed to plaintiff documents which demonstrate the manner in which it has identified and investigated potential noncitizens who are registered to vote as well as documents which show that it has removed individuals who have been demonstrated to be noncitizens. *See* [DE 17-8] Amd. Compl. Ex. G. Indeed, records of individuals who have been removed from the voter roll, including the reason for removal, are publicly available. *Id.* But the documents at issue here are records of individual voters who the NCSBOE, for one reason or another, has identified as *potential* noncitizens. The Court concludes that the

---

[2] Defendants have not challenged plaintiff's compliance with the prerequisites to bringing this suit.

6

information plaintiff requests concerning individuals on the voter rolls is uniquely sensitive and vulnerable to abuse, and thus that the NCSBOE is not required to disclose it by the NVRA.

In so holding, the Court is guided by the following. First, and importantly, being identified as an individual who is registered to vote but who may not be a United States citizen raises the specter of immigration violations and criminal activity. *See, e.g.,* 18 U.S.C. § 611. This is plainly the type of information that is both sensitive and vulnerable to abuse. *See, e.g., Senate of the Com. of Puerto Rico on Behalf of Judiciary Comm. v. U.S. Dep't of Justice*, 823 F.2d 574, 588 (D.C. Cir. 1987) ("There is little question that disclosing the identity of targets of law-enforcement investigations can subject those identified to embarrassment and potentially more serious reputational harm."). Moreover, plaintiff's broad request seeks not only individual voter registration records, but also documents relating to immigration or citizen status. Such documents would include copies of birth certificates or passports, both of which may be utilized, like social security numbers, in identity theft. *See Greidinger v. Davis*, 988 F.2d 1344, 1354 (4th Cir. 1993).

Second, the NVRA expressly prevents the disclosure of a potential voter's declination to register to vote and the identity of a voter's voter registration agency, which may be a public assistance office. 52 U.S.C. §§ 20507(i)(1); 20506(a)(2). These express exemptions demonstrate that while Congress was concerned with transparency when enacting the NVRA, it was unwilling completely override individual privacy in areas which may result in either stigma or harassment. *See* S. Rep. No. 103-6, 35 (1993); *Kemp*, 208 F. Supp. 3d 1320, 1339-40 (N.D. Ga. 2016). Further, the NCSBOE contends that it has identified potential noncitizen registered voters from two primary sources: North Carolina driver's license records, which include a noncitizen designation

on the driver's identification card,[3] and a confidential Department of Homeland Security database. Other federal statutes, such as the Privacy Act, 5 U.S.C. § 552a(b), and the Drivers Privacy Protection Act, 18 U.S.C. § 2721(c), protect from disclosure by the NCSBOE the records sought by plaintiff which would have been used to identify a potential noncitizen voter.

Contrary to plaintiff's argument, the Fourth Circuit in *Long* did not address the issue presented here when it decided the narrow question of whether the NVRA requires disclosure of completed voter registration applications. *Long*, 682 F.3d at 340. The request to the board of elections in *Long* was for "completed voter registration applications of any individual who timely submitted an application at any time from January 1, 2008, through October 31, 2008, who was not registered to vote in time for the November 4, 2008 general election [and] documents identifying the reasons the applications were rejected." *Id.* at 333. Unlike the plaintiff in *Long*, plaintiff here has not requested voter registration applications made during a period of time and the documents which identify the reasons applications were rejected. Instead, plaintiff has requested a broad array of documents concerning all registrants who were identified as *potentially* not satisfying the citizenship requirement for registration. Plaintiff's request for documents well-exceeds the scope of what was requested in *Long*, especially as it seeks, as its starting point, voter registrant information that is uniquely sensitive and vulnerable to abuse.

The Court concludes that the NVRA does not require public disclosure of the voter registration information sought by plaintiff. Plaintiff has therefore failed to state a claim, and the claims against defendant Bell are dismissed.

---

[3] Information pertaining to a driver's identification card is a motor vehicle record subject to protection by the Drivers Privacy Protection Act. *Lake v. Neal*, 585 F.3d 1059, 1060-61 (7th Cir. 2009).

8

## CONCLUSION

For the foregoing reasons, defendants' motions to dismiss [DE 20 & 22] are GRANTED. The pending motion to dismiss the original complaint [DE 11] is DENIED AS MOOT. The clerk is DIRECTED to close the case.

SO ORDERED, this 16 day of October, 2019.

Terrence W. Boyle
TERRENCE W. BOYLE
CHIEF UNITED STATES DISTRICT JUDGE