IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:19-CV-248-BO

| | |
|---|---|
| PUBLIC INTEREST LEGAL FOUNDATION, INC., <br><br> Plaintiff, <br><br> v. <br><br> KAREN BRINSON BELL, *in her official capacity as Executive Director of the North Carolina State Board of Elections*; and NORTH CAROLINA STATE BOARD OF ELECTIONS; <br><br> Defendants. | **ANSWER TO FIRST AMENDED COMPLAINT** |

Defendant Karen Brinson Bell, in her official capacity as Executive Director of the North Carolina State Board of Elections, hereby answers the First Amended Complaint filed in this matter (Doc. 17). Prior Defendant North Carolina State Board of Elections was dismissed from this matter on October 17, 2019 (Docs. 29, 31), a decision that Plaintiff did not appeal, (*see* Doc. 35 at 9 n.3). Defendant Bell answers the First Amended Complaint's allegations as follows:

**JURISDICTION AND VENUE[1]**

1.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331, becausethe action arises under the laws of the United States. This Court also has jurisdiction under 52 U.S.C. § 20510(b), as the action seeks injunctive and declaratory relief under the NVRA.

RESPONSE:  These allegations are legal conclusions which require no response.

---

[1]      Headings and numbered allegations from the Amended Complaint are included for informational and organizational purposes only, and do not indicate adoption or admission of the headings or allegations by the Defendant.

2.     Venue in this Court is proper under 28 U.S.C. § 1391(b)(1), because the Defendants reside in this district, and under 28 U.S.C. § 1391(b)(2), because a substantial part of the events or omissions giving rise to the claim occurred in this district.

RESPONSE:  It is admitted that Defendant Bell resides in this district and that part of the events or omissions giving rise to the claim occurred in this district.  The remaining allegations are legal conclusions which require no response.

## PARTIES

3.     The Public Interest Legal Foundation, Inc., (the "Foundation") is a non-partisan, public interest organization incorporated and based in Indianapolis, Indiana. The Foundation seeks to promote the integrity of elections nationwide through research, education, remedial programs, and litigation. The Foundation regularly utilizes the NVRA's Public Disclosure Provision and state and federal open records laws that require government records be made available to the public. Using records and data compiled through these open records laws, the Foundation produces and disseminates reports, articles, blog and social media posts, and newsletters in order to advance the public education aspect of its organizational mission.

RESPONSE:  It is admitted that Plaintiff has used records and data obtained from official sources to produce and disseminate reports and articles.  Otherwise, Defendant lacks knowledge or information sufficient to form a belief about the truth of these allegations.

4.     Defendant Karen Brinson Bell is the Executive Director of the State Board of Elections. Defendant Brinson Bell is the Chief State Elections Official of North Carolina for purposes of the NVRA and is responsible for administration of North Carolina's election laws and coordination of State responsibilities under the NVRA. N.C. Gen. Stat. § 163-27; N.C.

2

Gen.Stat. § 163-82.2. *See also*, 52 U.S.C. § 20509. Defendant Brinson Bell is responsible for compliance with the NVRA, including the Public Disclosure Provision, 52 U.S.C. § 20507(i).

RESPONSE:  It is admitted that Defendant Bell is the Executive Director of the North Carolina State Board of Elections.  The remaining allegations are legal conclusions which require no response.  The legal citations in the allegations speak for themselves and are the best evidence of their contents.

5.      Defendant North Carolina State Board of Elections is the state agency responsiblefor the administration of North Carolina's election laws. *See, e.g.*. N.C. Gen. Stat. § 163-22. The North Carolina State Board of Elections is responsible for overseeing elections and supervising and maintaining voter registration and election records. Defendant North Carolina State Board ofElections is responsible for compliance with the NVRA, including the Public Disclosure Provision, 52 U.S.C. § 20507(i).

RESPONSE:  It is admitted that Prior Defendant North Carolina State Board of Elections is a state agency.  The remaining allegations are legal conclusions which require no response.  The legal citations in the allegations speak for themselves and are the best evidence of their contents.

6.      Defendants are collectively referred to as "State BOE" throughout this AmendedComplaint. Unless otherwise specified, all allegations in this Amended Complaint are made against all Defendants.

RESPONSE:  This is not a factual allegation that requires a response, except to acknowledge that there is only one Defendant in this action, because the State Board of

3

Elections was dismissed with finality.

7.    Under 52 U.S.C. § 20507(i), the State BOE is required to maintain all records related to registration list maintenance activities for at least two years and must permit public inspection of all such records.

RESPONSE:  These allegations are legal conclusions which require no response.

8.    The State BOE is a custodian of the requested records.

RESPONSE:  It is admitted that the State Board is a custodian of some of the requested records.  Otherwise denied.

## BACKGROUND

9.    This is a public records case. More than nine months ago, the Foundation requested access to records that federal law entitles the Foundation to inspect and photocopy. Defendants are admittedly denying the Foundation access to the requested records. The Foundation now has no recourse but to seek relief from this Court.

RESPONSE:  It is admitted that Plaintiffs seek records that are kept by public agencies, but it is denied that all of those records are "public records," as that term is construed in the law.  It is admitted that in the fall of 2018, the Foundation requested access to records, and the State Board provided certain records and denied access to certain records.  Whether federal law entitles the Foundation to inspect and photocopy any of the requested records is a legal conclusion which requires no response.  Defendant lacks knowledge or information sufficient to form a belief about whether the Foundation had no recourse but to seek relief from this Court.

4

10.     The governing statute is more than just a federal freedom of information law. Rather, upon request, election administration officials must "make available for *public inspection* . . . all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters." 52 U.S.C. § 20507(i)(1) (emphasis added) (hereafter, the "Public Disclosure Provision").

RESPONSE:  These allegations are legal conclusions which require no response.  The legal citation in the allegations speaks for itself and is the best evidence of its contents.

11.     The Public Disclosure Provision confers on the Foundation and every individual "a public right to information." *Project Vote/Voting for Am., Inc. v. Long*, 752 F. Supp. 2d 697, 703 (E.D. Va. 2010). "[A] statutory right to information is substantive" in kind, *Landrum v. Blackbird Enters.*, LLC, 214 F. Supp. 3d 566, 571 (S.D. Tex. 2016), and thus a violation of that right creates an informational injury sufficient to establish Article III standing, *FEC v. Akins*, 524 U.S. 11, 21 (1998) ("[A] plaintiff suffers an 'injury in fact' when the plaintiff fails to obtaininformation which must be publicly disclosed pursuant to a statute").

RESPONSE:  These allegations are legal conclusions which require no response.  The legal citations in the allegations speak for themselves and are the best evidence of their contents.

12.     The Fourth Circuit Court of Appeals instructs that the Public Disclosure Provisionis to be interpreted broadly, explaining that the NVRA's "use of the word 'all' [as a modifier] suggests an expansive meaning because 'all' is a term of great breadth." *Project

*Vote / Voting for Am., Inc. v. Long*, 682 F.3d 331, 336 (4th Cir. 2012). The Public Disclosure

Provision's "language embodies Congress's conviction that Americans who are eligible under

law to vote have every right to exercise their franchise, a right that must not be sacrificed to

administrative chicanery, oversights, or inefficiencies." *Id*. at 334-35. Accordingly, "the NVRA

requires disclosure of all materials described in Section 8(i)(1), including voter registration

records." *Id*. at 337 (emphasis added).

RESPONSE:  These allegations are legal conclusions which require no response.  The

legal citations in the allegations speak for themselves and are the best evidence of their

contents.


13.     As recently articulated by the Southern District of Florida, Congress intended

that the NVRA's inspection rights would allow the public to monitor the activities of

government as they concern the right to vote:

> [The NVRA's Public Disclosure Provision is] available to any member of the
> public … and convey[s] Congress's intention that the public should be
> monitoring the state of the voter rolls and the adequacy of election officials' list
> maintenance programs. [52 U.S.C. § 20507(i)]. Accordingly, election officials
> must provide full public access to all records related to their list maintenance
> activities, including their voter rolls. *Id*. This mandatory public inspection right
> is designed to preserve the right to vote and ensure that election officials are
> complying with the NVRA. *Project Vote v. Long*, 682 F.3d. 331, 335 (4th Cir.
> 2012).

*Bellitto v. Snipes*, No. 16-cv-61474, 2018 U.S. Dist. LEXIS 103617, at *8 (S.D. Fla. Mar. 30,

2018).

RESPONSE:  These allegations are legal conclusions which require no response.  The

legal citations in the allegations speak for themselves and are the best evidence of their

contents.

6

14.     According to this Court, "to the extent [Defendant] maintains records concerningimplementation of its list maintenance activities . . . [it] is required to make such records available for public inspection." *Voter Integrity Project NC, Inc. v. Wake Cty. Bd. of Elections*, 301 F. Supp. 3d 612, 618 n.5 (E.D.N.C. 2017).

RESPONSE:  These allegations are legal conclusions which require no response.  The legal citation in the allegations speaks for itself and is the best evidence of its contents.


15.     The State BOE, who is charged with the administration of the voter registration and elections process, is not complying with the NVRA's Public Disclosure Provision. By denying the Foundation access to the requested records, the State BOE is causing a concrete injury to the Foundation in violation of the Foundation's right to information conferred by the NVRA and is frustrating the Foundation's organizational mission. To remedy its ongoing injury,the Foundation seeks declaratory and injunctive relief from this Court. Specifically, the Foundation seeks a declaration that the requested records are subject to public inspection under the NVRA. The Foundation also seeks an order compelling the State BOE to comply with the NVRA's Public Disclosure Provision through an order commanding the State BOE to permit inspection and duplication of all requested records in its actual and constructive possession.

RESPONSE:  These allegations are legal conclusions which require no response.  It is denied that Plaintiff is entitled to any relief.


16.     The NVRA's Public Disclosure Provision provides:

         Each State shall maintain for at least 2 years and shall make available

7

for public inspection and, where available, photocopying at a reasonable cost, all records concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters, except to the extent that such records relate to a declination to register to vote or to the identity of a voter registration agency through which any particular voter is registered.

52 U.S.C. § 20507(i)(1); *see also Project Vote v. Long*, 682 F.3d 331, 337 (4th Cir.

2012) ("First, the statute clearly states that '*all* records' falling under Section 8(i)(1) must be

publicly disclosed, not just those explicitly listed in Section 8(i)(2)") (emphasis in original).

RESPONSE: These allegations are legal conclusions which require no response. The

legal citations in the allegations speak for themselves and are the best evidence of their

contents.

17.     The only records exempted from the NVRA's Public Disclosure Provision are

"records relate[d] to a declination to register to vote or the identity of a voter registration

agency through which any particular voter is registered." 52 U.S.C. § 20507(i)(1).

RESPONSE: These allegations are legal conclusions which require no response. The

legal citation in the allegations speaks for itself and is the best evidence of its contents.

18.     The NVRA's civil enforcement provision allows for a private right of action by

any person "aggrieved by a violation," after providing, if necessary, "written notice of the

violation to the chief election official of the State involved." 52 U.S.C. § 20510(b).

If the violation is not corrected within 90 days after receipt of a notice . . . or within 20 days after receipt of the notice if the violation occurred within 120 days before the date of an election for Federal office, the aggrieved person may bring a civil action in an appropriate district court for declaratory or injunctive relief with respect to the violation.

52 U.S.C. § 20510(b)(2).

RESPONSE:  These allegations are legal conclusions which require no response.  The legal citations in the allegations speak for themselves and are the best evidence of their contents.

19.     However, "[i]f the violation occurred within 30 days before the date of an electionfor Federal office, the aggrieved person need not provide notice to the chief election official of the State under paragraph (1) before bringing a civil action under paragraph (2)." 52 U.S.C. § 20510(b)(3).

RESPONSE:  These allegations are legal conclusions which require no response.  The legal citations in the allegations speak for themselves and are the best evidence of their contents.

20.     A person is "aggrieved" by a violation of the Public Disclosure Provision if the person is denied access to records to which he is entitled under the NVRA.

RESPONSE:  These allegations are legal conclusions which require no response.

21.     In North Carolina, list maintenance records are maintained by state and county officials using a statewide computerized voter registration system, which facilitates voter registration and provides a central database containing voter registration information for each county. N.C. Gen. Stat. § 163-82.11.

RESPONSE:  Admitted.  The legal citation in the allegations speaks for itself and is the best evidence of its contents.

22.     The State BOE is required to "adopt a uniform program that makes a diligent effort not less than twice each year . . . [t]o remove the names of ineligible voters from the official lists of eligible voters." N.C. Gen. Stat. § 163-82.14(a).

RESPONSE:  Admitted.  The legal citation in the allegations speaks for itself and is the best evidence of its contents.


23.     The State BOE "has the authority to perform list maintenance…with the same authority as a county board." N.C. Gen. Stat. § 163.82-14(e).

RESPONSE:  Admitted.  The legal citation in the allegations speaks for itself and is the best evidence of its contents.


24.     The State BOE coordinates with the North Carolina Division of Motor Vehicles ("DMV") to identify registered voters who have indicated to DMV that they do not satisfy the citizenship qualification to register and vote. *See* Exhibit A (report of audit conducted after 2016 General Election).[2]  Each such registrant is sent a notice asking for confirmation of his or her citizenship status. Registrants who fail to respond to the inquiry are removed from the lists of registrants who are eligible to vote. Records related to those activities are responsive to the Foundation's request and must be made available under the Public Disclosure Provision.

---

[2] *See also, e.g.*, Letter from State BOE Executive Director Gary Bartlett to North Carolina House Elections Committee, Attachment B at 6, March 11, 2013, available at, https://www.ncleg.gov/documentsites/committees/JointAppropriationsGeneralGovernment/2013%20Session/03-07-13%20Meeting/sbe_GA_response_with_attachments.pdf (last accessed Aug.2, 2019) (describing DMV audit to identify and remove noncitizens who are registered to vote).

RESPONSE:  It is admitted that the State Board coordinates with the North Carolina Division of Motor Vehicles ("DMV") on voter list-maintenance activities, but it is denied that, which respect to the information from DMV that the State Board relied on to identify potential noncitizens on the voter rolls, DMV customers indicate to DMV that they do not satisfy the citizenship qualification to register and vote.  Exhibit A and the document cited in the footnote speak for themselves and are the best evidence of their contents.  Whether the records discussed in these allegations must be made available under the NVRA is a legal conclusion which requires no response.  The remaining allegations are denied.

25.    The State BOE coordinates with the U.S. Department of Homeland Security and the U.S. Citizenship and Immigration Service to identify registrants who do not satisfy the citizenship qualification to register and vote. Exhibit G at 2-3. Records related to those activities are responsive to the Foundation's request and must be made available under the Public Disclosure Provision.

RESPONSE:  It is admitted that the State Board has coordinated with U.S. Citizenship and Immigration Services, which is an agency of the U.S. Department of Homeland Security, to identify registrants who may not satisfy the citizenship qualification to register and vote.  It is denied that this effort, by itself, can determine if a registrant does not satisfy the citizenship qualification to register and vote.  The cited exhibit speaks for itself and is the best evidence of its contents.  Whether the records discussed in these allegations must be made available under the NVRA is a legal conclusion which requires no response.

26.    On information and belief, the State BOE has engaged and is engaging in

11

other programs and activities conducted to identify and remove ineligible registrants from the registration rolls, including registrants who do not satisfy the necessary citizenship requirements. Records related to those activities are responsive to the Foundation's request and must be made available under the Public Disclosure Provision.

RESPONSE: It is admitted that the State Board has engaged and is engaging in other programs and activities conducted to identify and remove ineligible registrants from the registration rolls. Otherwise denied.

27.    United States citizenship is a requirement to register and to vote in North Carolina. N.C. Gen. Stat. §§ 163-55(a); 163-54.

RESPONSE: Admitted.

28.    In 2014, the State BOE reported that it "completed an audit of more than 10,000 registered voters with questionable citizenship status. The Agency analyzed data provided by the N.C. Division of Motor Vehicles and the U.S. Department of Homeland Security to flag 1,425 currently registered voters who are likely non-citizens."[3]

RESPONSE: It is admitted that in 2014, the State Board issued the cited press release, which speaks for itself and is the best evidence of its contents.

29.    In April 2017, the State BOE issued the Post-Election Audit Report for

---

[3] Press Release, North Carolina State Board of Elections, *Board of Elections finalizes citizenship audit*, Oct. 24, 2014, https://www.ncsbe.gov/press-releases?udt_2226_param_detail=15.

GeneralElection 2016. Exhibit A. The audit's Summary provides:

> **41 non-citizens with legal status (green card, etc.) cast ballots.**
> The StateConstitution only permits U.S. citizens to register and to vote. The
> audit pairing state and federal databases identified an additional 34 voters who
> provided documents showing they are U.S. citizens. Investigators continue to
> review 61 additional records.

Exhibit A at 3 (bolded language in original).

RESPONSE: It is admitted that in April 2017, the State Board issued the Post-Election

Audit Report, General Election 2016. Exhibit A speaks for itself and is the best evidence of its

contents.

30.     In August 2018, federal prosecutors charged 19 foreign nationals with

registeringto vote and voting illegally in North Carolina in the 2016 presidential election.[4]

RESPONSE: Defendant lacks knowledge or information sufficient to form a belief

about the truth of these allegations. The cited press release from the U.S. Attorney's Office

speaks for itself and is the best evidence of its contents.

31.     On September 10, 2018, the Foundation sent letters via email to the county

boardsof elections for the counties of Durham, Guilford, and Forsyth. Copies of these letters

are attached as Exhibit B.

RESPONSE: Admitted. Exhibit B speaks for itself and is the best evidence of its

contents.

---

[4] Press Release, U.S. Attorney's Office, Eastern District of North Carolina, *Nineteen Foreign
Nationals Charged for Voting in 2016 Election*, Aug. 24, 2018, https://www.justice.gov/usao-
ednc/pr/nineteen-foreign-nationals-charged-voting-2016-election.

32.     Citing the NVRA's Public Disclosure Provision of the NVRA, 52 U.S.C. §

20507(i), the Foundation's letters sought the opportunity to inspect the following three broad

categories of records concerning each county board's programs and activities related to the

registration and removal of suspected and actual non-U.S. citizens since 2006:

>       1.      Documents regarding all registrants who were identified as
> potentially not satisfying the citizenship requirements for registration from any
> official information source, including information obtained from the various
> agencies within the U.S. Department of Homeland Security, North Carolina
> Department of Motor Vehicles, and from the North Carolina State Board of
> Elections since January 1, 2006. This request extends to all documents that
> provide the name of the registrant, the voting history of such registrant, the nature
> and content of any notice sent to the registrant, including the date of the notice,
> the response (if any) of the registrant, and actions taken regarding the registrant's
> registration (if any) and the date of the action. This request extends to electronic
> records capable of compilation.

>       2.      All documents and records of communication received by your
> office from registered voters, legal counsel, claimed relatives, or other agents
> since January 1, 2006 requesting a removal or cancellation from the voter roll for
> any reason related to non-U.S. citizenship. Please include any official records
> indicating maintenance actions undertaken thereafter.

>       3.      All documents and records of communication received by your
> office from jury selection officials—state and federal--since January 1, 2006
> referencing individuals who claimed to be non-U.S. citizens when attempting to
> avoid serving a duty call. This request seeks copies of the official referrals and
> documents indicating where your office matched a claim of noncitizenship to an
> existing registered voter and extends to the communications and maintenance
> actions taken as a result that were memorialized in any written form.

RESPONSE:  The Foundation's letters speak for themselves and are the best evidence

of their contents.


33.     The request also provided specific examples of responsive documents,

including the "completed voter application form" for each registrant and "[a]ny documents

sent by your office to the voter to require that an affirmation of citizenship or noncitizenship be

given in writing with responses included, where applicable." The full scope of records sought is available at Exhibit B.

RESPONSE:  The Foundation's letters speak for themselves and are the best evidence of their contents.

34.     When the Foundation received no response to the requests, the Foundation notified each county board on October 1, 2018 that it was in violation of the NVRA, copying the State BOE on the correspondence. Exhibit C.

RESPONSE: It is admitted that on October 1, 2018, the Foundation threatened legal action regarding a records request.  Otherwise, Defendant lacks knowledge or information sufficient to form a belief about the truth of these allegations.  Exhibit C speaks for itself and is the best evidence of its contents.

35.     On October 1, 2018, Patrick Gannon, Public Information Officer for the StateBOE, contacted the Foundation via email, stating,

>    We at the State Board of Elections & Ethics Enforcement hope to help facilitate a response to your recent records request to some of North Carolina's county boards of elections, as our agency likely houses some of the data responsive to your request.
>
>    We are aware of requests to two counties – Durham and Forsyth. Were additional requests made to other counties?

Exhibit D at 4.

RESPONSE:  Admitted.  Exhibit D speaks for itself and is the best evidence of its contents.

36.     On October 1, 2018, the Foundation made the State BOE aware of the third pending records request—to Guilford County—and, on October 9, 2018, the Foundation asked the State BOE to collect and provide "identical information" from the counties of Mecklenburgand Buncombe. Exhibit D at 3-4. The requests for records of the county boards in Durham, Forsyth, Guilford, Mecklenburg, and Buncombe are hereafter referred to collectively as the "County Records Requests."

RESPONSE:  Admitted.  Exhibit D speaks for itself and is the best evidence of its contents.

37.     When no further correspondence was received from the State BOE, the Foundation wrote to the State BOE via email on October 29, 2018, asking for an update on the progress of the County Records Requests. Exhibit D at 3.

RESPONSE:  It is admitted that the Foundation wrote to the State Board via email on October 29, 2018, asking for an update on the progress of the County Records Requests. Defendant lacks information or knowledge sufficient to form a belief about why the Foundation sent that email.  Exhibit D speaks for itself and is the best evidence of its contents.

38.     Later that day, the State BOE responded via email, assuring the Foundation that the State BOE was "working on them" and "would hope to have a response to [the Foundation] some time in November." Exhibit D at 2.

RESPONSE:  Admitted.  Exhibit D speaks for itself and is the best evidence of its contents.

16

39.    The State BOE did not produce any records or further communicate with the Foundation in November 2018.

RESPONSE:  It is admitted that a general election occurred in November 2018 and that the State Board did not produce any records or further communicate with the Foundation during that month.


40.    Cognizant that the State BOE was facing uncertainty regarding the legality of its composition[5], the Foundation remained patient, and agreed to travel to State BOE offices to conduct an in-person inspection of the requested records on January 11, 2019. On December 13,2018, the Foundation informed the State BOE via email of its plans to visit the State BOE for aninspection. Exhibit D at 2.

RESPONSE:   Defendant lacks information or knowledge sufficient to form a belief about the allegations in the first sentence, except it is expressly denied that anyone from the State Board "agreed" with or even discussed with Plaintiff any plans to travel to the State Board's offices, to the extent that Plaintiff is suggesting this in the allegations.  The Foundation's statements to the State Board via email on December 13, 2018 are contained in Exhibit D, which speaks for itself and is the best evidence of its contents.


41.    On or around January 9, 2019, the State BOE contacted the Foundation via telephone to communicate that the scheduled in-person visit was not necessary because the

---

[5]  Horsch, The News & Observer, The clock is ticking for elections board ruled unconstitutional,but there's a reprieve, Nov. 30, 2018, https://www.newsobserver.com/news/politics- government/article222432185.html.

State BOE would begin production of records by the end of January—as agreed to by both parties at the time. On January 9, 2019, the phone call was memorialized in an email, in which the State BOE stated, "Working on the citizenship request now, per our discussion. I will send records for your additional request on a rolling basis as they are reviewed and redacted." Exhibit D at 2. Based on those representations, the Foundation cancelled its representative's flight to State BOE offices. However, the State BOE did not produce any records or further communicate with the Foundation by the end of January 2019.

RESPONSE: It is admitted that on or around January 9, 2019, the State Board contacted the Foundation via telephone to communicate that the scheduled in-person visit was not necessary because the State Board would begin production of records—as agreed to by both parties at the time. It is further admitted that on January 9, 2019, the phone call was memorialized in an email from the State Board, a copy of which appears in Exhibit D, which speaks for itself and is the best evidence of its contents. Defendant lacks information or knowledge sufficient to form a belief about Plaintiff's travel plans or any expected production schedule. It is admitted that the State Board did not produce records or further communicate with the Foundation by the end of January 2019, a time during which the State Board was conducting a labor-intensive investigation into irregularities in the general election contest for North Carolina's Ninth Congressional District.

42. More than two months later, on April 10, 2019, the Foundation again wrote to the State BOE via email to request an update on the progress of the County Records Requests, stating, "We're well-past the agreed time and are simply running out of runway. Please advise asap." Exhibit D at 1.

18

RESPONSE: The Foundation's email of April 10, 2019 is copied in Exhibit D, which speaks for itself and is the best evidence of its contents.

43.     Later than day, the State BOE responded via email, assuring the Foundation that an "update" and records were imminently forthcoming, stating, "I will give you a full update andhopefully start providing responsive documents tomorrow or Friday." Exhibit D at 1. The State BOE did not produce any "update" or any records by Friday, April 12, 2019.

RESPONSE: The State Board's email of April 10, 2019 is copied in Exhibit D, which speaks for itself and is the best evidence of its contents.

44.     The Foundation waited for a response for nearly three additional weeks beforeagain contacting the State BOE.

RESPONSE: Defendant lacks information or knowledge sufficient to form a belief as to the truth of these allegations, except that it is admitted that the Foundation again contacted the State Board on April 30, 2019.

45.     On April 30, 2019, the Foundation contacted Kim Westbrook Strach, then-Executive Director of the State BOE and North Carolina's Chief Election Official, by letter via email and through the United States Postal Service. A copy of the letter, hereafter referred to asthe "NVRA Violation Notice" is attached as Exhibit E. A copy of the email sent to then-Executive Director Strach (and the general contact email for the State BOE—Elections.SBOE@ncsbe.gov) attaching the NVRA Notice Letter is attached as Exhibit F.

RESPONSE: Admitted.

46.     Then-State BOE Chairman Robert Cordle received a copy of the NVRA ViolationNotice via the United States Postal Service. Exhibit E at 3.

RESPONSE:  Defendant lacks information or knowledge sufficient to form a belief as to the truth of these allegations.

47.     The NVRA Violation Notice notified then-Executive Director Strach that the Foundation has not received any responsive records from her office, despite repeated assurancesthat production of records was imminently forthcoming. Exhibit E at 1.

RESPONSE:  The letter to Executive Director Strach of April 30, 2019 is included in Exhibit E, which speaks for itself and is the best evidence of its contents.

48.     The NVRA Violation Notice also notified then-Executive Director Strach that therequested records are subject to disclosure under to the NVRA's Public Disclosure Provision, 52

U.S.C. § 20507(i). Exhibit E at 1.

RESPONSE:  The letter to Executive Director Strach of April 30, 2019 is included in Exhibit E, which speaks for itself and is the best evidence of its contents.

49.     The NVRA Violation Notice also notified then-Executive Director Strach that theState BOE is in violation of the NVRA for failure to permit inspection and photocopying of the requested records, as required by 52 U.S.C. § 20507(i). Exhibit E at 1.

RESPONSE:  The letter to Executive Director Strach of April 30, 2019 is included in

Exhibit E, which speaks for itself and is the best evidence of its contents.

50.     A primary election for federal office in North Carolina was scheduled for and didoccur on May 14, 2019.[6]

RESPONSE:  Admitted.

51.     The NVRA violation described in this Complaint occurred and was ongoingwithin 30 days of the federal election scheduled for May 14, 2019.

RESPONSE:  Denied.

52.     For NVRA violations occurring within 30 days of an election for federal office, there is no curative period. "The aggrieved person need not provide notice to the chief election official of the State . . . before bringing a civil action " 52 U.S.C. § 20510(b)(3).

RESPONSE:  These allegations are legal conclusions which require no response.

53.     Although not required by the NVRA, the Foundation nevertheless provided pre-litigation notice to then-Executive Director Strach—the Chief Election Official of North Carolina, N.C. Gen. Stat. § 163-82.2—in an effort to resolve this dispute without court intervention.

RESPONSE:  It is admitted that the Foundation sent a letter notifying Executive Director Strach of its preparations to file a lawsuit.  Defendant lacks information or knowledge sufficient to form a belief as to Plaintiff's intentions with this letter.

_____

[6]  https://s3.amazonaws.com/dl.ncsbe.gov/Elections/2019/District9Candidates.pdf.

54.     The NVRA Notice Letter informed then-Executive Director Strach and the StateBOE that "[i]f the NVRA violation described herein is not corrected immediately, the Foundation will pursue federal litigation to enforce its rights." Exhibit E at 3.

RESPONSE:  The letter to Executive Director Strach of April 30, 2019 is included in Exhibit E, which speaks for itself and is the best evidence of its contents.


55.     On May 3, 2019, the Foundation received a letter and documents via email from Josh Lawson, then-General Counsel for the State BOE. A copy of the letter is attached as ExhibitG.

RESPONSE:  Admitted, except to clarify that documents were provided both as enclosures with the State Board's letter and via links in that letter, which permitted the Foundation to access certain responsive materials online, because the records found at those links exceeded 700 MB in file size and therefore would not have been transmittable via email.


56.     The State BOE's May 3 letter describes programs and activities conducted by theState BOE to perform registration list maintenance with respect to suspected or actual noncitizenregistrants and acknowledged that records of those programs and activities are responsive to the Foundation's requests. Exhibit G at 2-3.

RESPONSE:  The text of the State Board's May 3, 2019 letter (without enclosures) is included in Exhibit G, which speaks for itself and is the best evidence of its contents.


57.     The May 3 letter further explained that the State BOE will not permit the

Foundation to inspect those records. Exhibit G at 2-3.

RESPONSE: The text of the State Board's May 3, 2019 letter (without enclosures) is included in Exhibit G, which speaks for itself and is the best evidence of its contents.

58. The State BOE attached to its May 3 letter a small number of records it claimed were responsive to the Foundation's request.

RESPONSE: It is admitted that the State Board attached to its May 3, 2019 letter records, and provided links within that letter to other records. Otherwise denied.

59. The attached records included the State BOE's Post-Election Audit Report for General Election 2016 (the "2016 Audit"). Exhibit A.

RESPONSE: Admitted.

60. The 2016 Audit describes programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters with respect to suspected and actual noncitizens. Exhibit A at 3, 5-6, 9-10.

RESPONSE: The 2016 Audit Report is included in Exhibit A, which speaks for itself and is the best evidence of its contents.

61. The 2016 Audit refers to "[i]nformation obtained from those who are not citizens," Exhibit A at 6, and includes documents entitled "Sample Letter to Possible Non-U.S. Citizen Voters," Exhibit A at 29-30, and "Admission or Denial of Non-U.S. Citizen Return Form," Exhibit A at 31.

RESPONSE:  The 2016 Audit Report is included in Exhibit A, which speaks for itself and is the best evidence of its contents.

62.     The 2016 Audit also includes a document that indicates how many registered noncitizens were identified in each North Carolina county. Exhibit A at 22-23. Each of the counties from which records were requested had at least one noncitizen whose registration was canceled in connection with the 2016 Audit. *Id*.

RESPONSE:  The 2016 Audit Report is included in Exhibit A, which speaks for itself and is the best evidence of its contents.  The allegations in the second sentence are admitted.

63.     Records relating to the 2016 Audit were requested, are responsive to the County Records Request, and must be made available for inspection under the NVRA's Public Disclosure Provision.

RESPONSE:  It is denied that records relating to the 2016 Audit were requested.  It is denied that the 2016 Audit Report is responsive to the County Records Request, since the 2016 Audit was conducted by the State Board.  The last allegation is a legal conclusion which requires no response.

64.     Although the Foundation had already done so, the May 3 letter asked the Foundation to "please indicate what records it now seeks." Exhibit G at 3.

RESPONSE:  The text of the State Board's May 3, 2019 letter (without enclosures) is included in Exhibit G, which speaks for itself and is the best evidence of its contents.  It is denied that the Foundation had, at the time of the May 3 letter, explained what records it

would seek in light of the State Board's explanation of the legal restrictions on producing the records as originally requested and the public availability of registration records for all counties.

65. On May 9, 2019, the Foundation responded to the State BOE via letter, which explained why the State BOE's decision to withhold the requested records is without justificationand explained that the State BOE "remains in violation of the NVRA." Exhibit H at 2.

RESPONSE: It is admitted that the Foundation responded to the State Board on May 9, 2019, via a letter, a copy of which is included in Exhibit H, which speaks for itself and is the best evidence of its contents.

66. The May 9 letter further explained that the Foundation continues to seek all records responsive to its request and repeated the examples of such records, Exhibit H at 2, specifically referencing the records described in the 2016 Audit (Exhibit A).

RESPONSE: The Foundation's letter of May 9, 2019 is included in Exhibit H, which speaks for itself and is the best evidence of its contents.

67. The Foundation informed the State BOE that its representative planned to visit theState BOE's offices a week later, on May 16, 2019, to inspect and retrieve copies of the requested records. Exhibit H at 2.

RESPONSE: Admitted.

68.     On May 13, 2019, the Foundation received an email from Paul Cox, an attorney in the North Carolina Attorney General's Office, who claimed to represent the State BOE. Exhibit I at 4-5. The State BOE stated it would not accommodate the Foundation's planned inspection due to the need to prepare for two upcoming special elections. *Id*. at 5. Counsel for theState BOE proposed a phone call to discuss the Foundation's records request and provided thedays and times he would be available the following week. *Id*. at 5.

RESPONSE:  It is admitted that the undersigned counsel for the State Board sent an email to a representative of the Foundation on May 13, 2019, a copy of which is included in Exhibit I, which speaks for itself and is the best evidence of its contents.

69.     The Foundation was forced to rearrange its travel plans to accommodate the schedule of the State BOE and its counsel.

RESPONSE:  Defendant lacks information or knowledge sufficient to form a belief as to the truth of these allegations.

70.     In a letter dated May 14, 2019, the Foundation informed the State BOE that its representative now planned to visit the State BOE's offices the week following the special election and on a day when Mr. Cox stated he was available—May 23, 2019. Exhibit J.

RESPONSE:  It is admitted that the Foundation responded to the undersigned counsel's email in a letter dated May 14, 2019, a copy of which is included in Exhibit J, which speaks for itself and is the best evidence of its contents.  It is denied that the undersigned counsel stated that he was available for an in-person meeting on May 23, 2019.

26

71. A week later, and two days before the Foundation's scheduled travel to State BOEoffices, counsel for the State BOE stated in an email that the State BOE would mail responsive records to the Foundation on a hard drive. Exhibit I at 3-4. Counsel did not describe the records or state whether the State BOE was continuing to withhold responsive records as described in its May 3 letter.

RESPONSE: It is admitted that counsel for the State Board sent an email to a representative of the Foundation on May 21, 2019, a copy of which is included in Exhibit I, which speaks for itself and is the best evidence of its contents. Defendant lacks information or knowledge sufficient to form a belief as to the truth of the allegations regarding Plaintiff's travel.

72. The next day, May 22, 2019, the Foundation responded via email, stating,

> I cannot presently assess whether the records satisfy the request in full. Because mytravel is already booked, I believe the best way to proceed is to retrieve the recordsin person, as planned. That way I can review what was compiled and resolve any outstanding issues in person. Hopefully, that will allow us to conclude this matter as quickly as possible.
>
> My plan is to arrive at the offices of the State Board at 10:00 am. If you prefer to be present and if another meeting location is preferable, please let me know as soonas possible.

Exhibit I at 3.

RESPONSE: It is admitted that the Foundation responded via email on May 22, 2019, an email which is included in Exhibit I, which speaks for itself and is the best evidence of its contents.

73. Counsel for the State BOE did not respond to the Foundation's May 22, 2019 email.

RESPONSE:  Denied.

74.     On May 22, 2019, the Foundation's representative traveled from Indianapolis, Indiana to Raleigh, North Carolina, and the following day, visited the State BOE's offices, as planned and as was communicated to the State BOE on May 14, 2019.

RESPONSE:  It is admitted that the Foundation's representative visited the State Board's offices on May 23, 2019, as the Foundation's representative had indicated he would in a letter dated May 14, 2019.  Defendant lacks information or knowledge sufficient to form a belief as to the truth of the remaining allegations.

75.     When the Foundation's representative arrived, an administrative assistant gave him an envelope containing a cover letter, dated May 22, 2019, and a hard drive.

RESPONSE:  It is admitted that when the Foundation's representative arrived, they were provided an envelope containing a cover letter, dated May 22, 2019, and a hard drive. Otherwise, Defendant lacks information or knowledge sufficient to form a belief as to the truth of these allegations.

76.     The Foundation's representative asked to speak with then-General Counsel Josh Lawson, who informed the Foundation that he could not discuss the Foundation's records requestfurther and referred the Foundation's representative to the State BOE counsel, Paul Cox.

RESPONSE:  It is admitted that the Foundation's representative asked to speak to then-General Counsel Josh Lawson, and Mr. Lawson referred the Foundation's representative to the

28

State Board's litigation counsel, Paul Cox, pursuant to N.C. R. Prof'l Conduct 4.2. Otherwise denied.

77.     The hard drive provided to the Foundation on May 23, 2019 did not contain the requested records. With limited exception, the hard drive contained the same incomplete set of records provided via email on May 3, 2019.

RESPONSE:  Denied.  It is admitted that the hard drive contained the records that the Foundation was provided via email and hyperlink previously, with some additional records.

78.     The May 22 cover letter that accompanied the hard drive explained, "For further background, I refer you to the May 3, 2019 letter from Board of Elections General Counsel JoshLawson that was addressed to you." Exhibit K.

RESPONSE:  The May 22, 2019 cover letter from the State Board's counsel is included in Exhibit K, which speaks for itself and is the best evidence of its contents.

79.     While still in Raleigh, North Carolina, the Foundation's representative contactedthe State BOE's counsel via email and asked to meet in person to discuss the Foundation's request for records. Exhibit I at 3.

RESPONSE:  It is admitted that the Foundation's representative contacted the State Board's counsel via email on May 23, 2019 in which he asked for a meeting on the same day. A copy of this email is included in Exhibit I, which speaks for itself and is the best evidence of its contents.

80.     The State BOE's counsel responded that he could not meet due to deadlines and child care. Exhibit I at 2.

RESPONSE:  The State Board counsel's response is included in Exhibit I, which speaks for itself and is the best evidence of its contents.


81.     On May 29, 2019, the Foundation spoke via telephone with the State BOE's counsel. During that call, the Foundation asked whether the State BOE is continuing to withhold records under the position stated in the May 3, 2019 letter from then-General Counsel Josh Lawson (Exhibit G), or whether the State BOE will permit inspection of the records as requested.State BOE counsel stated that he needed additional time to confirm his client's position. Exhibit Iat 1 (email memorializing telephone call).

RESPONSE:  It is admitted that on May 29, 2019, a representative of the Foundation spoke via telephone with the State Board's counsel.  The description of that call in these allegations is incomplete and therefore misleading; the allegations regarding the contents of that call are therefore denied.


82.     On June 7, 2019, counsel for the State BOE left a voicemail for the Foundation, inwhich he indicated that the State BOE is standing by its previously-stated position—that taken inits May 3 letter (Exhibit G)—that the Foundation is not entitled to inspect the requested records.

RESPONSE:  It is admitted that on June 7, 2019, counsel for the State Board called the Foundation's representative and left a voicemail, in which he confirmed the State Board's position that records revealing the identities of individuals investigated by the State Board as

30

potentially being noncitizens would not be produced, for the reasons set forth in the State

Board's prior letter to the Foundation. It is further clarified that the specific issue the State

Board's counsel was confirming prior to this voicemail was the status of records revealing the

identities of such individuals.


83.     It has now been **326 days** since the Foundation first requested access to public

voter list maintenance records in the possession of North Carolina election officials.

RESPONSE: Denied.


84.     The Foundation has spent considerable time and financial resources in an effort

toobtain the requested records without the need for judicial intervention.

RESPONSE: Defendant lacks information or knowledge sufficient to form a belief as

to the truth of these allegations.


85.     Despite those efforts, the State BOE is denying the Foundation's request for

inspection of records pursuant to the NVRA's Public Disclosure Provision.

RESPONSE: It is admitted that at the time this lawsuit was filed, the State Board

would not disclose certain records because those records were protected by law from

disclosure, although it is denied that those records were responsive to the Foundation's

requests. It is admitted that the Foundation's requests invoked the NVRA's Public Disclosure

Provision. Whether the withheld records are actually covered by that provision is a legal

conclusion which requires no response.

86.     The records requested from the State BOE are records "concerning the implementation of programs and activities conducted for the purpose of ensuring the accuracy and currency of official lists of eligible voters" 52 U.S.C. § 20507(i)(1).

RESPONSE:  It is denied that the Foundation requested records from the State Board. Whether the records the Foundation requested fit within the quoted language of this allegation is a legal conclusion which requires no response.


87.     Under the NVRA, the State BOE is obligated to make the requested records available for public inspection and photocopying. *Id*.

RESPONSE:  These allegations are legal conclusions which require no response.


88.     The State BOE has not done so and is therefore in violation of law. 52 U.S.C. § 20510.

RESPONSE:  Denied.


89.     The State BOE's violation of the NVRA occurred within 30 days of an election for federal office and the violation is ongoing. Therefore, there is no pre-litigation notice requirement. 52 U.S.C. § 20510(b)(3).

RESPONSE:  Denied.


90.     However, North Carolina's Chief Election Official was sent and received notice on April 30, 2019 that the State BOE was violating the NVRA. Exhibits E and F. Even if the 20-day curative period provided by 52 U.S.C. § 20510(b)(2) applied, the notice requirement

has been satisfied. *See Voter Integrity Project NC, Inc. v. Wake Cty. Bd. of Elections*, 301 F. Supp.3d 612, 617 n.4 (E.D.N.C. 2017).

RESPONSE:  It is admitted that North Carolina's chief election official was sent and received a notice of the Foundation's belief that the State Board was violating the NVRA on April 30, 2019.  The remaining allegations are legal conclusions which require no response.

91.     "[A] plaintiff suffers an 'injury in fact' when the plaintiff fails to obtain information which must be publicly disclosed pursuant to a statute." *FEC v. Akins*, 524 U.S. 11, 21 (1998). The Foundation is suffering a clear informational injury as a direct result of the State BOE's violations of the NVRA because the State BOE has denied the Foundation access to the records to which it is entitled under the law. This injury is ongoing.

RESPONSE:  These allegations are legal conclusions which require no response, although it is denied that the State Board has violated the Foundation's rights, to the extent that is implied in these allegations.

92.     The State BOE's actions have also frustrated and harmed the Foundation's organizational mission.

RESPONSE:  Defendant lacks information or knowledge sufficient to form a belief as to the truth of these allegations.

93.     As an integral part of its public interest mission, the Foundation gathers and disseminates information about compliance by state and local officials with federal election statutes, including election integrity statutes.

33

RESPONSE: Defendant lacks information or knowledge sufficient to form a belief as to the truth of these allegations.

94. Using records and data compiled through use of the NVRA's Public Disclosure Provision, the Foundation has produced written reports concerning the registration and voting activity of noncitizens. The Foundation publishes and disseminates these reports as part of its mission.

RESPONSE: It is admitted that Plaintiff has used records and data obtained from official sources to produce written reports concerning the registration and voting activity of noncitizens. Otherwise, Defendant lacks information or knowledge sufficient to form a belief as to the truth of these allegations.

95. The Foundation publicizes its work through media and press sources. Representatives of the Foundation appear on national television programs and in widely circulated newspapers of record to discuss the inadequacies of state election systems in preventing noncitizens from registering and voting. The Foundation believes that keeping voter rolls free of ineligible registrants requires full transparency of government agencies. By denying the Foundation access to the requested records the State BOE has impaired and will impair theFoundation from carrying out its mission.

RESPONSE: It is admitted that the Foundation publicizes its work through media and press sources. Otherwise, Defendant lacks information or knowledge sufficient to form a belief as to the truth of these allegations.

96.     A central activity of the Foundation is to promote election integrity and compliance with federal and state statutes that are designed to improve the accuracy of voter rolls across the country. The State BOE's violations of NVRA have impaired and will impair theFoundation from carrying out this its mission.

RESPONSE:  Defendant lacks information or knowledge sufficient to form a belief as to the truth of these allegations.

97.     The failure of the State BOE to comply with its obligations under the NVRA has also undermined the confidence of North Carolina's properly registered voters in the integrity ofthe voter registration rolls, and, accordingly, has undermined the integrity of elections held across the State of North Carolina.

RESPONSE:  Denied.

98.     The State BOE has not cured its violation of the NVRA.

RESPONSE:  Denied.

99.     The State BOE's failure to permit inspection and duplication of the requested records pursuant to the NVRA is causing the Foundation to suffer an informational injury and has further frustrated, impeded and harmed the efforts of the Foundation.

RESPONSE:  It is denied that the State Board failed to permit inspection or duplication of the requested records.  It is further denied that the State Board's records revealing the identities of individuals the State Board had investigated for potentially being noncitizens are required to be disclosed under the NVRA; these records were not requested, in any event.

Otherwise, Defendant lacks information or knowledge sufficient to form a belief as to the truth of these allegations.

## **COUNT I**

100.     Plaintiff realleges paragraphs 1 through 99 as if fully stated herein.

RESPONSE:  Defendant repleads its responses to the cited paragraphs.


101.     Defendants have failed to permit inspection and duplication of records concerningDefendants' implementation of programs and activities conducted to ensure the accuracy and currency of the official lists of eligible registrants, in violation of Section 8 of the NVRA, 52 U.S.C. § 20507(i). *See Project Vote v. Long*, 682 F.3d 331, 334-335 (4th Cir. 2012) (The NVRArequires election officials to provide such records to the public).

RESPONSE:  Denied.


102.     Defendants have not cured their violation of law.

RESPONSE:  Denied.


103.     Plaintiff is suffering an ongoing informational injury as a direct result of Defendants' violations of Section 8 of the NVRA because the Plaintiff does not have the data and records requested. The NVRA confers upon Plaintiff a right to information, and by denyingthat information to the Plaintiff, the Defendants have caused a concrete injury to the Plaintiff.

RESPONSE:  Denied.

36

104.    Plaintiff will continue to be injured by the Defendants' violations of Section 8

ofthe NVRA unless and until the Defendants are enjoined from continuing to violate the law.

RESPONSE:  Denied.


105.    Plaintiff has no adequate remedy at law.

RESPONSE:  This allegation is a legal conclusion which requires no response.


WHEREFORE, Defendant requests the following:

1.    That the Amended Complaint be dismissed;

2.    That Plaintiff have and recover nothing from Defendant;

3.    That costs of this action, including a reasonable attorney's fee, be taxed to

Plaintiff; and

4.    For such other relief to Defendant as the Court deems just and proper.

This the 15th day of June, 2021.

JOSHUA H. STEIN
Attorney General

/s/ Paul M. Cox
Paul M. Cox
Special Deputy Attorney General
N.C. State Bar No. 49146
Email: pcox@ncdoj.gov
N.C. Department of Justice
Post Office Box 629
Raleigh, NC 27602-0629
Telephone: (919) 716-6900
Fax: (919) 716-6750

*Counsel for Defendant Karen Brinson Bell*